1   BONNETT, FAIRBOURN,
        FRIEDMAN & BALINT, P.C.
2   TODD D. CARPENTER (CA 234464)
    600 West Broadway, Suite 900
3   San Diego, CA 92101
    Telephone:     (619) 756-6978
4   Facsimile:     (602) 798-5860

5   BONNETT, FAIRBOURN,
        FRIEDMAN & BALINT, P.C.
6   ANDREW S. FRIEDMAN (AZ005425)
    ELAINE A. RYAN (AZ 012870)
7   PATRICIA N. SYVERSON (CA 203111; AZ 020191)
    2901 N. Central Avenue, Suite 1000
8   Phoenix, AZ  85012-3311
    Telephone:     (602) 776-5925
9   Facsimile:     (602) 798-5860

10

11                      UNITED STATES DISTRICT COURT

12              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| DAVID JOHNS, an Individual, and MARC BORDMAN, an Individual, on Behalf of Themselves, All Others Similarly Situated, and the General Public, | Case No. 09 CV 1935 DMS JMA |
| | **SECOND AMENDED CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| v. | 1.  Violation of Unfair Competition Law, Business and Professions Code §17200; and |
| BAYER CORPORATION, an Indiana corporation and BAYER HEALTHCARE, LLC, a Delaware limited liability company, | 2.  Violation of Consumers Legal Remedies Act, Civil Code §1750. |
| Defendants. | **[JURY TRIAL DEMANDED]** |

1    Plaintiffs David Johns and Marc Bordman (collectively "Plaintiffs"), by and through their

2    attorneys, bring this action on behalf of themselves, all others similarly situated, and the general

3    public against defendants Bayer Corporation and Bayer Healthcare, LLC (collectively "Defendants"

4    or "Bayer").   The Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2).

5    Plaintiffs allege, on information and belief, except for information based on personal knowledge, as

6    follows:

7    **NATURE OF THE ACTION**

8        1.    This is a consumer rights class action lawsuit.  Defendants manufacture, distribute

9    and sell One A Day Men's 50+ Advantage and One A Day Men's Health Formula (the "Products")

10   in California and throughout the United States.

11       2.    This is a class action challenging Defendants' misrepresentations on Product

12   packaging and in television commercials that the Products promote and support prostate health and

13   reduce the risk of prostate cancer, because one of the "key nutrients" in the Products – selenium –

14   has been scientifically shown to reduce the risk of prostate cancer (hereinafter referred to as

15   Defendants' "Prostate Claim").  Defendants' representation is false, misleading and reasonably

16   likely to deceive the public.  In fact, scientific evidence indicates that the Products' key nutrient may

17   be harmful, and Defendants do not have a single properly conducted clinical trial that substantiates

18   their claim.

19       3.    Plaintiffs bring this action, on behalf of themselves and all similarly situated

20   consumers of the Products.  Based on violations of the Consumers Legal Remedies Act and the

21   Unfair Competition Law, Plaintiffs seek redress for consumers of the Products, including a refund of

22   the purchase price of the Products, injunctive relief, including an order requiring Defendants to

23   engage in a corrective advertising campaign, and actual and punitive damages.

24   **JURISDICTION AND VENUE**

25       4.    This Court has original jurisdiction pursuant to 18 U.S.C. §1332(d). The matter in

26   controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class

27   action in which members of the Class and Plaintiffs are citizens of states different from Defendants.

28

1    Further, greater than two-thirds of the Class members reside in states other than the state in which

2    Defendants are citizens.

3          5.      Venue lies within this District pursuant to 28 U.S.C. § 1391(b)-(c) in that: Defendants

4    conduct business in this District; certain acts giving rise to the claims asserted in this Complaint

5    occurred within this District; the illegal actions of Defendants, as alleged in this Complaint, caused

6    damage to Plaintiff Johns and Class members within this District; and Plaintiff Johns resides within

7    this District.

8                                    **THE PARTIES**

9          6.      Plaintiff David Johns is an individual residing in San Diego County, California.

10   During the Class period, Plaintiff Johns was exposed to and saw Defendants' advertising claims,

11   including the Product's labeling, and he purchased One A Day Men's Health Formula, suffered

12   injury in fact, and lost money and property as a result of the unlawful, unfair, misleading and

13   deceptive advertising described herein.

14         7.      Plaintiff Marc Bordman is an individual residing in Riverside County, California.

15   During the Class period, Plaintiff Bordman was exposed to and saw Defendants' advertising claims,

16   including the Product's labeling, and he purchased One A Day Men's 50+ Advantage, suffered

17   injury in fact, and lost money and property as a result of the unlawful, unfair, misleading and

18   deceptive advertising described herein.

19         8.      Defendant Bayer Corporation is an Indiana corporation with its headquarters and

20   principal place of business in Pittsburgh, Pennsylvania.  Defendant, through its subsidiaries,

21   manufactures and sells a variety of products, including vitamins, dietary supplements, and over-the-

22   counter and prescription drugs.  Defendant Bayer Corporation has annual sales in excess of $10

23   billion, including sales of $191 million of its One A Day vitamins.

24         9.      Defendant Bayer Healthcare, LLC is a Delaware limited liability company with its

25   principal place of business in Morristown, New Jersey.  Bayer Healthcare, LLC is a subsidiary of

26   Bayer Corporation.  Defendant Bayer Healthcare, LLC is responsible for researching, developing,

27

28

1  manufacturing, marketing, and distributing the Products to millions of consumers throughout the

2  United States, including tens of thousands of consumers in California.

3      10.    Defendants Bayer Corporation and Bayer Healthcare LLC shall be referred to

4  collectively as "Defendants" or "Bayer."

5      11.    Plaintiffs are informed and believe, and thus allege, that at all times herein mentioned,

6  each of the Defendants was the agent, employee, representative, partner, joint venturer, and/or alter

7  ego of the other Defendant and, in doing the things alleged herein, was acting within the course and

8  scope of such agency, employment, representation, on behalf of such partnership or joint venture,

9  and/or as such alter ego, with the authority, permission, consent, and/or ratification of the other

10  Defendant.

11  **<u>DEFENDANTS' UNLAWFUL CONDUCT</u>**

12      12.    Defendants manufacture and distribute the One A Day Men's 50+ Advantage and

13  One A Day Men's Health Formula (collectively, "One A Day," or the "Products"). Each of the

14  Products contain 105 micrograms of selenium per dose which is approximately twice the

15  Recommended Dietary Allowance (RDA) for adults.

16      13.    Through the Products' advertising and labeling, Defendants claim that the Products

17  promote prostate health. Defendants prominently claim in their advertising and labeling that the

18  Products' "key nutrient" – selenium – has the ability to mitigate, prevent, treat and/or cure prostate

19  cancer. Defendants go so far as to state that there is scientific evidence supporting their Prostate

20  Claim.

21      14.    Defendants' Prostate Claim prominently appears on the Product packages and in

22  television advertisements.

23      15.    For example, each Product package states that the vitamins "Supports Prostate

24  Health" as follows:

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12



13
14
15
16
17
18
19



20      16.      Defendants reinforce the misleading Prostate Claim on the back of the Products'

21  packaging.  Appearing in highlighted, bolded and italicized print on the package for Men's One A

22  Day Health Formula, Defendants make the Prostate Claim stating: "Complete Multivitamin Plus

23  More† for Men - Did you know that prostate cancer is the most frequently diagnosed cancer in men

24  and that emerging research suggests Selenium may reduce the risk of prostate cancer? One A Day®

25  Men's Health Formula is a complete multivitamin plus key nutrients including Selenium to support a

26  healthy prostate":

27
28



17.   Further, Defendants make the substantially similar Prostate Claim on their One A Day® Men's 50+ Advantage package where they state that the Product is a "Multivitamin Specially Formulated for Men Over 50…One A Day® Men's 50+ Advantage contains Lycopene and nearly twice the Selenium in Centrum® Silver® to support prostate health…":

In addition to the representations found on the Product packages, Defendants reinforce the Prostate Claim message by having run at least 11 television advertisements in which they

1  promote the ability of their One A Day vitamins, which contain selenium, to reduce the risk

2  of prostate cancer.  For example, one television commercial for One A Day Men's Health

3  Formula represented:

4  Did you know one in three men will face prostate issues?  One in three, really?
   That's why One A Day Men's is a complete multivitamin with selenium which

5  emerging research suggests can help prostate health.

6  19.   Defendants' television commercial for One A Day Men's 50+ Advantage that said:

7  To stay on top of my game after 50, I switched to a complete multivitamin with more.  Only
   One A Day Men's 50+ Advantage has gingko for memory and concentration plus support for

8  prostate and heart health.  Safe.  That's a great call.  One A Day Men's.

9  20.   Plaintiffs have seen and heard television commercials making the Prostate Claim.

10  21.   Defendants' Prostate Claim, that the Products support and promote prostate health,

11  including through its scientifically tested "key nutrient" selenium, is unsubstantiated, false and

12  misleading.

13  22.   Scientific research does not substantiate Defendants' Prostate Claim, including the

14  claim that the Products with the "key nutrient" selenium reduce the risk of prostate cancer and

15  support prostate health. To the contrary, the research shows the amount of selenium in the Products

16  may be harmful.

17  23.   There have been two randomized controlled trials of selenium supplementation for

18  the prevention of prostate cancer—The Nutritional Prevention of Cancer ("NPC") trial and the

19  federally funded Selenium and Vitamin E Cancer Prevention Trial ("SELECT").

20  24.   The vast majority of men in the NPC trial received no benefit at all from the selenium

21  supplementation.[1]

22  25.   Of significant concern, the NPC trial found nearly a three-fold increased risk of self-

23  reported diabetes in men who were assigned to take 200 micrograms of selenium and who had the

24  highest levels of blood selenium at the start of the trial.[2]

25  ———————————————

26  [1] BJU International 2003; 91:608-612.

27  [2] Ann. Intern. Med. 2007; 147:217-23.

28

1    26.     In response to the finding, the American College of Physicians issued a summary for

2    patients stating:

3         Selenium supplements appear to **increase the risk for diabetes.** Although the
         findings need to be confirmed, long-term selenium supplementation should not be
4         viewed as harmless and [a] possibly healthy way to prevent illness.[3]

5    27.     In October 2008 the National Cancer Institute abruptly terminated the SELECT trial,

6    the largest prostate cancer prevention trial ever undertaken, because "selenium and vitamin E

7    supplements taken alone or together, did not prevent prostate cancer"[4] and because of "a small, but

8    not statistically significant increase in the number of cases of adult onset diabetes in men taking only

9    selenium." In fact, the increased risk of diabetes just missed statistical significance (p=.08 per

10   interim data of August 1, 2008.)[5]

11   28.     As a result of the previous selenium trial, in which there was a three-fold increased

12   risk in the number of self-reported diabetes, the SELECT data and the safety monitoring committee

13   "had some concern" about selenium.[6] The National Cancer Institute called the findings a

14   "concerning" trend.[7]

15   29.     The authors of the SELECT trial concluded that it "has definitely demonstrated that

16   **selenium, vitamin E, or selenium + vitamin E (at the tested doses and formulations) did not**

17   **prevent prostate cancer** in a generally healthy, heterogeneous population of the men in SELECT."[8]

18

19   _____

20   [3] Ann. Intern. Med. 2007; 147:1-14 (emphasis added).

21   [4] http://www.cancer.gov/newscenter/pressreleases/SELECTJAMAresults2008 (Last visited on
     March 8, 2010).  There was also the concern about "a small but not statistically significant increase
22   in the number of prostate cancer cases among the over 35,000 men age 50 or older in the trial taking
     only vitamin E."

23   [5] JAMA 2009; 301:39-51.

24   [6] JAMA 2009; 301:39-51.

25   [7] http://www.cancer.gov/clinicaltrials/digestpage/SELECT (Last visited on March 8, 2010).

26   [8] JAMA 2009; 301:39-51 (emphasis added).

27

28

30.     An editorial in the Journal of the American Medical Association accompanying publication of the SELECT results concluded that "*physicians should not recommend selenium or vitamin E—or any other antioxidant supplements—to their patients for preventing prostate cancer*."[9]

31.     In their letter to the FTC on June 18, 2009, nine prominent cancer researchers stated that the SELECT trial:

> [P]roduced strong evidence last October *that selenium does not prevent prostate cancer in a generally healthy, heterogeneous population of the men in the United States and Canada*. This Federally-financed study was the largest individually randomized cancer prevention trial ever conducted, and, given its high rates of adherence and statistical power, it's unlikely to have had missed detecting a benefit of even a very modest size. Bayer Healthcare is doing a disservice to men by misleading them about a protective role for selenium in prostate cancer. We ask that you take whatever steps are necessary to halt these ads as soon as possible.[10]

32.     These are not the only studies showing the failure of selenium to prevent prostate cancer. June M. Chan of the University of California at San Francisco and her colleagues at the Dana-Farber Cancer Institute, the Harvard Medical School, and the Fred Hutchinson Cancer Research Center found in their study of plasma selenium and manganese superoxide dismutase (SOD2) genotypes in men with prostate cancer that men with high blood levels of selenium who carried the V allele had a more than two-fold increased risk (RR=2.48) of presenting with aggressive prostate cancer, a finding that was statistically significant. An allele is, in basic terms, a unique form of a single gene. About 75% of men carry the V allele.

33.     They concluded that "for the 75% [of] men who carry the V allele, higher selenium levels might increase the likelihood of having worst tumor characteristics." They cautioned "against broad use of selenium for men with prostate cancer."[11]

---

[9] JAMA 2009; 301:102-3 (emphasis added).

[10] http://cspinet.org/new/pdf/bayer-ftc-letter-scientists.pdf (emphasis added).

[11] J CLIN ONCOL 2009; 27: 3577-83.

34.     In fact, Philip Kantoff, M.D., director of Dana Farbers Lank Center for Genitourinary Oncology and senior author of the study, said that "if you already have prostate cancer, it may be a bad thing to take selenium…There is some precedent to this [since] research has suggested that antioxidants could be protective if you don't have cancer, but once you do, then antioxidants may be a bad thing."[12]

35.     This study involved an ongoing cohort of men diagnosed with prostate cancer who donated blood for research before undergoing any type of local therapy and who consented to clinical research follow-up. The researchers concluded that it provided, "strong support for the hypothesis that plasma selenium levels and SOD2 genotype interact to influence risk of presenting with aggressive prostate cancer at diagnosis in men with localized or locally advanced prostate cancer."[13]

36.     Despite Defendants' attempts to characterize the above study as unexpected and unprecedented, the authors stated in their discussion of the results that data from previous studies indicated that higher doses of selenium could have adverse effects. And while they could not exclude the possibility that men with worse clinical features were taking extra selenium, they went on to say that this was unlikely, in part because the blood was donated shortly after diagnosis.

37.     Yet another recent study – announced April 26, 2009, at the annual meeting of the American Urological Association (AUA) – showed that selenium failed to prevent the development of prostate problems.

38.     In a three-year trial funded by the National Cancer Institute and the Ontario Institute of Cancer Research, men with precancerous lesions in the prostate called high-grade prostatic intraepithelial neoplasia who received a daily supplement of 200 micrograms of selenium, 40 grams

---

[12] http://www.dana-farber.org/abo/news/press/2009/selenium-intake-may-worsen-prostate-cancer-in-some-studyreports.html.

[13] *Id.*

1    of soy protein, and 800 IU of vitamins were just as likely to develop invasive prostate cancer as men

2    who received a placebo.[14]

3          39.     Christopher Amling, M.D., an AUA spokesman, stated that, "[u]nfortunately, as this

4    study shows, we have yet to find a dietary supplement that will reliably prevent prostate cancer." Dr.

5    Amling also concluded that "[t]he results of this study support the findings of the SELECT trial

6    *which also demonstrated no benefit using Vitamin E and selenium*. These studies highlight the

7    importance of conducting randomized trials of these agents since many of these supplements are

8    promoted falsely to the general public as having beneficial effects on cancer prevention and

9    progression."[15]

10         40.     Reacting to the results of the Canadian Study, lead researcher Dr. Neil E. Fleshner, a

11   Clinical Studies Resource Centre Member at the Ontario Cancer Institute and Love Chair in Prostate

12   Cancer Prevention at the University of Toronto, stated: "There was great hope that this would be a

13   magic bullet that would help prevent prostate cancer…Unfortunately it doesn't appear to be so."[16]

14         41.     The cumulative evidence thus shows that, rather than ensuring that the Prostate Claim

15   was substantiated by scientific proof, Defendants have ignored the overwhelming scientific data on

16   selenium and continue to make their dangerous, deceptive and unsubstantiated and illegal claims.

17         42.     Defendants have been caught in illegal behavior many times in the past, including:

18              a.      In 2001, Defendants paid $14 million to U.S. and state governments to settle

19         allegations that the company's actions helped healthcare providers submit inflated Medicaid

20         claims for drugs.[17]

21

22   _____

23   [14] Journal of Urology 2009; 181 (4 Suppl): 263.

24   [15]   http://www.auanet.org/content/press/press_releases/article.cfm?articleNo=115   (Last   visited
     March 8, 2010) (emphasis added).

25   [16] http://www.healthyontario.com/NewsItemDetails.aspx?newsitem_id=1616 (Last visited on March
     8, 2010).

26
     [17] www.nytimes.com/2001/01/24/us/bayer-to-pay-14-million-to-settle-charges-of-causing-inflated-
27   medicaidclaims.html.

28

1    b.    In 2003, Defendants pleaded guilty to a criminal charge and paid $257 million

2    in fines and penalties after a whistleblower exposed a scheme by the company to overcharge

3    for the antibiotic Cipro.[18] Media accounts at the time described it as the biggest recovery of

4    Medicaid fraud.

5    c.    In 2004, Defendants pleaded guilty to a criminal charge and paid a $66

6    million fine after a Justice Department investigation into Bayer's role in a price fixing

7    conspiracy involving a chemical used to make rubber products.[19]  Two Bayer executives

8    separately pleaded guilty and were also sentenced to prison for their role in the scandal.

9    d.    In 2007, Defendants paid $8 million to resolve allegations by state attorneys

10   general that the company failed to warn physicians and consumers about safety issues

11   surrounding its cholesterol-lowering drug called Baycol, which is no longer on the market.[20]

12   e.    In 2007, Defendants were fined $3.2 million dollars by the FTC for claims of

13   weight loss from the One a Day weight smart brand that were also false.[21] The Bayer

14   Company is currently running a $20 million corrective advertising campaign at the behest of

15   the FDA on another one of its products the YAZ birth control pill.[22] In both instances, Bayer

16   made deceptive and exaggerated claims of the benefits of these products while downplaying

17   and glazing over the negative effects and health risks of these products.

18   43.    Although it does not constitute scientific or clinical substantiation, a study conducted

19   by the Nutritional Prevention of Cancer Trial in 1996 "unexpectedly" found that selenium seemed to

20   prevent men from getting prostate cancer who had a history of skin cancer. However, the NPC study

---

[18] www.nytimes.com/2003/04/17/business/17DRUG.html (Last visited on March 8, 2010).

[19] www.osdoj.gov/atr/public/press_releases/2004/204602.htm.

[20] www.ksag.org/page/attorney-general-morrison-announces-30-state-settlement-with-bayer-corporation (Last visited March 8, 2010).

[21] www.ftc.gov/opa/2007/01/weightloss.shtml.

[22] http://www.oag.state.md.us/press/2009/020909.htm (Last visited on March 8, 2010).

1   was conducted using a form of selenium not present in the Products. Furthermore, two later analyses

2   of the NPC results determined that only a small minority of men may have benefited from selenium

3   supplementation and that selenium almost tripled the risk of developing diabetes: a fact which Bayer

4   ignores in its advertising and labeling.

5          44.    Despite the mounting scientific evidence, and warnings by the American College of

6   Physicians who reviewed the NPC study, Bayer does not warn that the long term use of the Products

7   may cause diabetes.

8          45.    The selenium supplement used in the NPC trial was brewer's yeast which contained

9   an organic form of selenium, selenomethionine. The form of selenium contained in the Products is

10  listed by Bayer as sodium selenate, an inorganic form of selenium.   Research has shown

11  selenomethionine has a significantly higher absorption rate than inorganic selenium such as sodium

12  selenate.[23]

13         46.    Bayer knew or reasonably should have known that there are significant nutritional

14  and biological differences between organic selenium, such as the selenomethionine found in

15  brewer's yeast, and the inorganic selenium as found in the sodium selenate contained in the

16  Products.

17         47.    As the manufacturer and distributor of the Products, Defendants possess specialized

18  knowledge regarding the content and effect of the ingredients contained in the Products and are in a

19  superior position to learn of the effects and have learned of the effects their Products will have on

20  consumers, including their effectiveness and harmful side effects.  Yet, Defendants continue to make

21  their Prostate Claim on the Products' packaging and fail to warn of the harmful side effects,

22  including an increased risk of diabetes.

23         48.    Plaintiffs have been misled by Defendants' labeling and Prostate Claim in

24  Defendants' television advertising into purchasing and paying for Products that do not have the

25

26

27  [23] Cancer Epidemiology Biomarkers and Prevention (Volume 15, pp. 804-810); American Journal of
    Clinical Nutrition (Volume 81, pp. 829-834, April 2005).

28

ability to prevent or reduce the risk of prostate cancer.  In fact, Plaintiffs have not only purchased products that are worthless for their ordinary and intended uses, but are dangerous.  As a direct result of Defendants' conduct, Plaintiffs have suffered injury in fact and lost money as a result of Defendants' unfair competition, including purchasing Products that are of no value, yet dangerous.

49.    Defendants, by contrast, have profited enormously from their misrepresentations and material omissions.  Defendants represent that in 2008 the company realized $10 billion in retail sales from their Products, including $191 million from the sale of the One A Day Products in California and elsewhere throughout the United States.

## PLAINTIFFS' EXPERIENCES

### David Johns

50.    Plaintiff Johns purchased a bottle of One A Day Men's Health Formula in July of 2009, and paid the retail price of approximately $8.00 for the bottle.

51.    Plaintiff Johns read the representations on the Product package, including the Prostate Claim set forth above, believed them to be true, and relied upon them in purchasing the Product. Further, although Plaintiff does not recall the specific dates, Plaintiff Johns did view and rely on the Prostate Claim appearing in several of Defendants' television commercials for the One A Day Men's Health Formula.

52.    The Prostate Claim on the Product package and television commercials was a material factor in Plaintiff Johns' decision to purchase and consume the One A Day Men's Health Formula vitamins.  Plaintiff's reliance on Defendants' representations was reasonable.

53.    Plaintiff Johns has suffered injury in fact and lost money and property as a result of the alleged misconduct.

### Marc Bordman

54.    Plaintiff Bordman has purchased several bottles of One A Day Men's 50+ Advantage during the statutory period, and paid the retail price for each bottle.

55.    Plaintiff Bordman read the representations on the Product package, including the Prostate Claim set forth above, believed them to be true, and relied upon them in purchasing the

1  Product. Further, although Plaintiff does not recall the specific dates, Plaintiff Bordman did view and

2  rely on the Prostate Claim appearing in several of Defendants' television commercials for the One A

3  Day Men's 50+ Advantage vitamins.

4          56.     The Prostate Claim on the Product package and television commercials was a

5  material factor in Plaintiff Bordman's decision to purchase and consume the One A Day Men's 50+

6  Advantage vitamins.  Plaintiff's reliance on Defendants' representations was reasonable.

7          57.     Plaintiff Bordman has suffered injury in fact and lost money and property as a result

8  of the alleged misconduct.

9                                    **CLASS ALLEGATIONS**

10         58.     Plaintiffs bring this action on behalf of themselves and the proposed Class members

11  under Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure.  The proposed Class consists

12  of:

13              All persons in the United States or, alternatively, all California
                residents who until the date notice is disseminated purchased One
14              Day Men's 50+ Advantage or One A Day Men's Health Formula.

15         59.     Excluded from the Class are Defendants, any person, firm, trust, corporation, officer,

16  director or other individual or entity in which Defendants have a controlling interest or which is

17  related to or affiliated with Defendants, and the legal representatives, heirs, successors-in-interest or

18  assigns of any such excluded party.

19         60.     The Class comprises many tens of thousands of consumers through California and the

20  United States.  The Class is so numerous that joinder of all members of the Class is impractical.

21         61.     This action involves questions of law and fact common to Plaintiffs and members of

22  the Class which include:

23              (a)     Whether Defendants have engaged in an unlawful, unfair, misleading or

24          deceptive business act or practice through their labeling and advertising practices;

25              (b)     Whether Defendants' labeling and advertising is misleading and/or likely to

26          deceive the nature of the Products;

27

28

(c)      Whether Defendants had adequate substantiation for the Prostate Claim prior to making it;

(d)      Whether Defendants' alleged conduct violates public policy;

(e)      Whether Plaintiffs and Class members are entitled to declaratory and injunctive relief, including enjoining Defendants from continuing to misrepresent the nature of the Products, and requiring Defendants to engage in a corrective advertising campaign;

(f)      Whether Plaintiffs and Class members are entitled to actual and punitive damages as a result of Defendants' conduct; and

(g)      Whether Plaintiffs and Class members have sustained monetary loss and the proper measure of that loss.

62.      Plaintiffs' claims are typical of the claims of the members of the Class.  The named Plaintiffs are members of the Class of victims described herein.

63.      The questions of law and fact common to the Class members, some of which are set out above, predominate over any questions affecting only individual Class members.

64.      The named Plaintiffs are willing and prepared to serve the Court and proposed Class in a representative capacity with all of the obligations and duties material thereto.  Plaintiffs will fairly and adequately protect the interests of the Class and have no interests adverse to or which directly and irrevocably conflict with, the interests of the other members of the Class.

65.      The self-interests of the named Class representatives are co-extensive with, and not antagonistic to, those of the absent Class members.  The proposed representatives will undertake to represent and protect the interests of the absent Class members.

66.      The named Plaintiffs have engaged the services of counsel indicated below.  Said counsel are experienced in complex class litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent the named Class representatives and absent Class members.

67.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this case as a class action.

68.     In addition, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual members, which would establish incompatible standards of conduct for Defendants.

69.     Unless a class is certified, Defendants will retain monies received as a result of their conduct that was taken from Plaintiffs and the proposed Class members.  Unless a classwide injunction is issued, Defendants will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

70.     Defendants have acted and refused to act on grounds that apply generally to the Class, making equitable relief appropriate respecting the Class as a whole.

### FIRST CAUSE OF ACTION
### VIOLATION OF UNFAIR COMPETITION LAW
### BUS. & PROF. CODE § 17200 *ET. SEQ.*

71.     Plaintiffs incorporate by reference each of the preceding allegations as though fully set forth herein.

72.     California Business & Professions Code §17200, *et seq.* prohibits acts of unfair competition, which means and includes any "unlawful, unfair or fraudulent business act or practice," or any "unfair, deceptive, untrue or misleading advertising."  Unfair competition laws in effect in other states similarly prohibit unfair and/or fraudulent business practices and advertising.

73.     Defendants violated California Business & Professions Code §17200's prohibition against engaging in an "unlawful" business act or practice, and similar laws in effect in other states, by, inter alia, making the representations and omissions of material facts, as set forth more fully herein, and violating the Federal Trade Commission Act, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and 17500 *et seq.*, Cal. Civ. Code §§ 1572, 1573, 1709, 1710, 1711, 1750, 1770, California Health

1  and Safety Code §§110660, 110760, 110765, 21 U.S.C. §342, 21 U.S.C. §343, the common law, and

2  other state laws that prohibit unfair competition and deceptive advertising.

3      74.    Defendants also violated California Business & Professions Code §17200's

4  prohibition against engaging in an "unfair" business act or practice, and similar laws in effect in

5  other states by, *inter alia*, misrepresenting on Product packaging and in television advertisements

6  that the Products support and promote prostate health, including that the Products' key nutrient –

7  selenium – has the ability to prevent or reduce the risk of prostate cancer, and failing to warn of the

8  increased risk of diabetes caused by consumption of their Products.  Defendants engaged in their

9  deceptive marketing campaign to, *inter alia*, gain an unfair competitive advantage over other vitamin

10  manufacturers who did not engage in similar misleading advertising practices.  Defendants' business

11  practices are unscrupulous, unethical and substantially injurious to consumers.   There is no

12  legitimate business reason for Defendants' business practices and thus the utility of Defendants'

13  business practices (zero) does not outweigh the harm to consumers (substantial).   Further,

14  Defendants' business practices undermine California's fundamental policy against unfair and sharp

15  business practices that are likely to deceive or mislead consumers, and which undercut trust and fair

16  competition in the consumer marketplace.   There were reasonably available alternatives to further

17  Defendants' legitimate business interests, other than the conduct described herein.

18      75.    The foregoing conduct also violates Business & Profession Code §17200's

19  prohibitions against "fraudulent" or deceptive business practices and similar laws in effect in other

20  states.  Defendants' misrepresentations on Product packaging and in television advertisements that

21  the Products support and promote prostate health, including that the Products' key nutrient–

22  selenium – has the ability to prevent or reduce the risk of prostate cancer, and failure to warn of the

23  increased risk of diabetes caused by consumption of their Products, are likely to and did deceive

24  reasonable consumers, including Plaintiffs, into believing the Products had specific properties which

25  they did not.

26

27

28

76.     Plaintiffs reserve the right to allege other violations of law which constitute other "unlawful, unfair or fraudulent business act[s] or practice[s]."   Such conduct is ongoing and continues to this day.

77.     Defendants' conduct caused and continues to cause substantial injury to Plaintiffs and the other Class members.   Plaintiffs and Class members have suffered injury in fact and have lost money as a result of Defendants' unlawful, unfair, deceptive and fraudulent business acts and practices.

78.     As a result of Defendants' violations of the UCL, and similar laws in effect in other states, Plaintiffs and Class members are entitled to Judgment and equitable relief against Defendants, as set forth in the Prayer for Relief.

79.     Additionally, pursuant to California Business and Professions Code §17203, Plaintiffs seek an order requiring Defendants to immediately cease such acts of unlawful, unfair and fraudulent business practices, and requiring Defendants to engage in a corrective advertising campaign, including notification of the Products' health risks.

**SECOND CAUSE OF ACTION**
**VIOLATION OF CONSUMERS LEGAL REMEDIES ACT,**
**CAL. CIVIL CODE § 1750**

80.     Plaintiffs incorporate by reference each of the preceding allegations as though fully set forth herein.

81.     This cause of action is brought under the Consumers Legal Remedies Act, California Civil Code §1750, et seq. (the "Act").   Plaintiffs are consumers as defined by California Civil Code §1761(d).   Defendants' Products are goods within the meaning of the Act.

82.     Defendants violated and continue to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiffs and the Class which were intended to result in, and did result in, the sale of Defendants' Products:

> (5)     Representing that [the Products have] . . . characteristics, . . .
> uses [or] benefits . . . which [they] do[] not have.
>
> *       *       *
>
> (7)     Representing that [the Products are] of a particular standard,
> quality or grade, . . . if [they are] of another.

*     *     *

(9)     Advertising goods . . . with the intent not to sell them as advertised.

*     *     *

(16)     Representing that [the Products have] been supplied in accordance with a previous representation when [they have] not.

83.     Defendants violated the Act by misrepresenting and advertising the Products' key ingredient – selenium – has the ability to prevent or reduce the risk of prostate cancer, when they knew, or should have known, that the representations and advertisements were unsubstantiated, false and misleading.

84.     Pursuant to California Civil Code §1782(d), Plaintiffs seek injunctive relief enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement.

85.     In accordance with the procedure proscribed in California Civil Code §1780, Plaintiffs gave written notice to Defendants of the particular violations of the Act and demanded that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of their intent to so act.

86.     Defendants have failed to rectify or agree to rectify the problems associated with the actions detailed above, or failed to provide notice to all affected consumers of their intent to do so, within 30 days of the date of written notice pursuant to §1782 of the Act.  Therefore, Plaintiffs further seek actual, punitive and statutory damages and all other relief available to them and the other members of the Class pursuant to California Civil Code §1780.  Defendants' conduct is malicious, fraudulent and wanton, and provides misleading information despite the fact that the Products may endanger consumer's health.

87.     Defendants' conduct as described above also violates consumer fraud, consumer protection, and unfair competition laws in other states, as well as the common law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for a judgment:

A.     Certifying this action as a Plaintiff class action as set forth above and appointing Plaintiffs as Class representatives;

1     B.     Awarding Plaintiffs and Class members actual and punitive damages;

2     C.     Awarding declaratory and injunctive relief as permitted by law or equity, including:

3  enjoining Defendants from continuing the unlawful practices as set forth herein, and directing

4  Defendants to identify, with Court supervision, victims of their conduct and pay them restitution and

5  disgorgement of all monies acquired by Defendants by means of any act or practice declared by this

6  Court to be wrongful, and enjoining Defendants from continuing to misrepresent the nature of their

7  Products and failing to warn of the health risks posed by their Products;

8     D.     Directing Defendants to engage in a corrective advertising campaign;

9     E.     Awarding Plaintiffs and Class members equitable relief and restitution;

10    F.     Awarding Plaintiffs pre-judgment and post-judgment interest as provided by law;

11    G.     Awarding Plaintiffs attorneys' fees and costs; and

12    H.     Awarding such other and further relief as may be just and proper.

13                              **JURY DEMAND**

14       Plaintiffs demand a trial by jury on all issues so triable.

15  DATED: March 11, 2010                    BONNETT, FAIRBOURN, FRIEDMAN
16                                              & BALINT, P.C.

17                                           */s/ Patricia N. Syverson*
                                             Andrew S. Friedman
18                                           Elaine A. Ryan
                                             Patricia N. Syverson
19                                           2901 N. Central Avenue, Suite 1000
                                             Phoenix, Arizona  85012-3311
20                                           Telephone:  602-776-5925
                                             Facsimile:   602-798-5860
21

22

23

24                                           BONNETT, FAIRBOURN, FRIEDMAN
                                                & BALINT, P.C.
25                                           Todd D. Carpenter
                                             600 W. Broadway, Suite 900
26                                           San Diego, California 92101
                                             Telephone: 619-756-6978
27                                           Facsimile: 602-798-5860

28

1                                                 Attorneys for Plaintiff

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2

3          I hereby certify that on March 11, 2010, I electronically filed the foregoing with the Clerk of

4     the Court using the CM/ECF system which will send notification of such filing to the e-mail

5     addresses denoted on the Electronic Mail notice list, and I hereby certify that I have mailed the

6     foregoing document or paper via the United States Postal Service to the non-CM/ECF participants

7     indicated on the Manual Notice list.

8          I certify under penalty of perjury under the laws of the United States of America that the

9     foregoing is true and correct.  Executed on March 11, 2010.

10

11                                                    /s/ Patricia N. Syverson
                                                      Patricia N. Syverson

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28