# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID JOHNS, on behalf of himself and all others similarly situated,<br><br>                                         Plaintiffs,<br><br>   vs.<br><br><br>BAYER CORPORATION, et al.,<br><br>                                         Defendants. | CASE NO. 09CV1935 DMS (JMA)<br><br>**ORDER: (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE, AND (2)DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>[Docs. 23-24] |

Pending before the Court are Defendants' motion to strike portions of Plaintiffs' Second Amended Complaint ("SAC"), and Defendants' motion to dismiss the SAC. For the reasons set forth below, Defendants' motion to strike is granted in part and denied in part, and Defendants' motion to dismiss is denied.

## I.
## BACKGROUND

Defendants Bayer Corporation and Bayer Healthcare, LLC, manufacture, distribute, and sell One A Day Men's 50+ Advantage ("Men's 50+") and One A Day Men's Health Formula ("Men's Health") vitamin products. (SAC ¶ 1.) Plaintiffs David Johns and Marc Bordman filed a putative class action alleging that Defendants misrepresented on product packaging and in television commercials that one of the products' key ingredients, selenium, has the ability to reduce the risk of

prostate cancer in men. (*Id.* at ¶ 2.) Plaintiff alleges that Defendants promoted the health benefits of selenium, but that selenium does not in fact prevent or reduce the risk of prostate cancer and may actually be harmful. (*Id.* at ¶¶ 14-22.) Plaintiffs cite to several scientific studies to support their claims that selenium does not promote prostate health and may increase the risk of diabetes. (*Id.* at ¶¶ 23-45.)

Plaintiff Johns purchased one bottle of Men's Health in July 2009 for approximately $8.00. (*Id.* at ¶ 50.) Plaintiff Bordman purchased several bottles of Men's 50+ and paid retail price for each bottle. (*Id.* at ¶ 54.) Both Plaintiffs allege they learned of Defendants' claims regarding selenium through television commercials and the product packaging, and relied on those statements in making their purchasing decisions. (*Id.* at ¶¶ 51, 55.) Plaintiffs seek to bring a class action on behalf of "all persons in the United States or, alternatively, all California residents who until the date notice is disseminated purchased One a Day Men's 50+ Advantage or One a Day Men's Health Formula." (*Id.* at ¶ 58.)

Plaintiffs allege claims for: (1) violation of California's Unfair Competition Law, California Business & Professions Code § 17200 ("UCL"), and (2) violation of the Consumers Legal Remedies Act, California Civil Code § 1750 ("CLRA"). Plaintiffs filed the SAC on March 11, 2010, after this Court granted in part Defendants' motion to strike and granted Defendants' motion to dismiss Plaintiffs' First Amended Complaint ("FAC"). (Docs. 21 & 22.) Defendants filed the instant motions on March 29, 2010. (Docs. 23 & 24.) Plaintiff filed an opposition to each motion, and Defendants filed a reply. (Docs. 27-30.)

## II.
## DISCUSSION

**A.  Motion to Strike**

*1. Paragraphs 22-46*

In the FAC, Plaintiffs' claims that selenium does not support prostate health and may in fact be harmful relied solely on allegations taken from a letter written by an interest group, the Center for Science in the Public Interest ("CSPI"). The Court struck Plaintiffs' allegations because Plaintiffs had failed to independently investigate the claims and could not simply lift the allegations from the CSPI

letter. (Doc. 21 at 4-5.)

Defendants argue that the allegations in the SAC suffer the same deficiencies because paragraphs 22-46 of the SAC are taken directly from another complaint filed in a different district, *McKinney v. Bayer Corp.*, Case No. 1:10-cv-00224 (N.D. Ohio 2010).[1] Plaintiffs concede they have used similar allegations to those in *McKinney*. (Syverson Decl. ¶ 5.) Nonetheless, Plaintiffs argue the Court should not strike the allegations because Plaintiffs have conducted their own independent factual investigation.

Attorneys have a non-delegable duty to make a reasonable inquiry into whether the factual contentions made in a complaint have evidentiary support. Fed. R. Civ. Pro. 11(b); *In re Connectics*, 542 F. Supp. 2d 996, 1005-06 (N.D. Cal. 2008). Here, Plaintiffs have made such an inquiry. The SAC is signed by attorney Patricia Syverson, who filed a declaration stating that she has reviewed publicly available information regarding the studies mentioned in the SAC in determining that there is a factual basis for the allegations. (Syverson Decl. ¶ 3.) Indeed, the SAC itself provides citations to the sources of Plaintiffs' information.

The cases cited by Defendants are distinguishable. In *In re Connectics*, 542 F. Supp. 2d at 1006, which this Court discussed in its previous Order, the court struck allegations lifted from an SEC complaint. There, however, the plaintiffs had not conducted an independent investigation and did not inform the court of any other sources of information on which they relied. *Id.* Here, Plaintiffs contend they have conducted an independent investigation and have provided the sources for publicly available information supporting their claims. In *Geinko v. Padda*, 2002 U.S. Dist. LEXIS 3316 (N.D. Ill. Feb. 26, 2002), in which the court warned that relying on other complaints would create a loophole in Rule 11 whereby "two plaintiffs could file separate actions each relying on the allegations in the other's complaint and both would state a claim for fraud," the court noted that the plaintiffs had failed to contact the attorneys in the other cases to discuss the claims. Here, Plaintiffs contacted the attorney in *McKinney* to discuss the basis for his claims, and indeed, that attorney has made an appearance in this case. The similarity in the two complaints is inevitable given that the same conduct underlies both cases. Accordingly, Defendants' motion to strike paragraphs 22-46 is denied.

---

[1] Defendants' request for judicial notice is granted.

*2. Paragraph 42*

Paragraph 42 of the SAC alleges that Defendants "have been caught in illegal behavior many times in the past" and cites five incidents which allegedly support this statement. Defendants move to strike this paragraph on the grounds that the previous incidents involve products and acts not at issue in this matter. Plaintiffs contend the previous matters give plausibility to Plaintiffs' claims and that it supports Plaintiffs' claims for punitive damages. The previous matters referenced, however, involve either unrelated conduct, or products not at issue here. To the extent evidence of Defendants' previous conduct may be relevant to Plaintiffs' punitive damages claims, the issue can be addressed at a later stage of the proceedings. *See Strassman v. Fresh Choice, Inc.*, 1995 WL 743728, *17 (N.D. Cal. Dec. 7, 1995) ("[A]llegations regarding prior acts are unnecessary at the pleading stage."). Accordingly, Defendants' motion to strike paragraph 42 is granted.

**B.   Motion to Dismiss**

Defendants move to dismiss Plaintiffs' claims on the grounds that Plaintiffs lack standing to pursue their claims and Plaintiffs have failed to adequately plead their claims.

*1.   Legal Standard*

In two recent opinions, the Supreme Court established a more stringent standard of review for 12(b)(6) motions. *See Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive a motion to dismiss under this new standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)). The reviewing court must therefore "identify the allegations in the complaint that are not entitled to the assumption of truth" and evaluate "the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951.

### 2. *Standing*

Defendants argue that Plaintiffs do not have standing to pursue claims based on television advertisements or based on Defendants' failure to warn of an alleged risk of diabetes. As discussed in this Court's previous Order, to have standing under the UCL, as well as to serve as a class representative, a plaintiff must plead and prove that he or she "has suffered injury in fact and has lost money or property as a result of" a defendant's unlawful, unfair, or fraudulent business practices. Cal. Bus. & Prof. Code §§ 17203-04. To have standing under the CLRA, a plaintiff must allege he or she was damaged by an alleged unlawful practice. *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 638 (2009.)

#### a. Television Advertisements

This Court previously held that Plaintiff Johns did not have standing under the UCL and CLRA to pursue claims regarding the Men's 50+ multivitamin because he did not purchase that product; he purchased only Men's Health. Further, Plaintiff did not have standing to pursue claims based on Defendants' radio, television or internet advertisements because he never alleged that he was exposed to such advertisements; rather, his purchasing decision was based on representations on the product packaging.

In the SAC, Plaintiffs cure these defects. Plaintiff Bordman alleges he purchased several bottles of Men's 50+, and both Plaintiffs allege they saw and relied on Defendants' television commercials. (SAC ¶¶ 20, 51, 54-55.) Defendants' argument that Plaintiffs fail to allege they "relied on the television advertisements in making their purchasing decisions" is unavailing. Plaintiffs allege that the claims regarding selenium on both the product packaging and the television commercials were a material factor in their decision to purchase and consume Defendants' products. (SAC ¶¶ 52, 56.) Accordingly, Plaintiffs have sufficiently alleged standing to pursue these claims.

#### b. Failure to Warn

Defendants also argue that Plaintiffs do not have standing under the UCL or CLRA to sue for Defendants' alleged failure to warn of the increased risk of diabetes because Plaintiffs do not allege reliance or injury based on a failure to warn. Plaintiffs, however, have alleged they relied on the claims regarding selenium and that these claims are deceptive, in part, due to the alleged increased risk

1  of diabetes associated with selenium.  Accordingly, Plaintiffs have sufficiently alleged standing to
2  pursue these claims.

3        *3. Sufficiency of the Allegations*[2]

4        Defendants contend that Plaintiffs have not adequately alleged that Defendants' statements
5  were false or likely to deceive consumers.  Specifically, Defendants contend the allegations in the SAC
6  mischaracterize Defendants' statements, the scientific studies do not show Defendants' claims were
7  false, and Plaintiffs do not show the selenium in Defendants' products increases the risk for diabetes.

8        a.  <u>Mischaracterization of Defendants' Statements</u>

9        The SAC alleges Defendants advertised their products as promoting and supporting prostate
10 health and reducing the risk of prostate cancer because one of its key ingredients, selenium, has been
11 scientifically shown to reduce the risk of prostate cancer.  (SAC ¶ 2.)  Plaintiffs also allege that
12 Defendants' advertising indicates that selenium has the ability to mitigate, prevent, treat, and/or cure
13 prostate cancer.  (*Id.* at ¶ 13.)  Defendants contend these allegations misrepresent Defendants'
14 advertisements because the statements regarding selenium are qualified by language such as "emerging
15 research suggests" and are accompanied by disclaimers, such as "This statement has not been
16 evaluated by the Food and Drug Administration."  Further, Defendants argue its products never state
17 that selenium can prevent prostate cancer, and indeed, the products contain a disclaimer stating "This
18 product is not intended to diagnose, treat, cure, or prevent any disease."

19       Claims under the UCL are governed by the reasonable consumer test.  *Williams v. Gerber*
20 *Products, Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  The law prohibits "not only advertising which is
21 false, but also advertising which[,] although true, is either actually misleading or which has a capacity,
22 likelihood or tendency to deceive or confuse the public."  *Id.* (quotations omitted).  Although a court
23 may review the advertising itself on a motion to dismiss, "whether a business practice is deceptive will
24 usually be a question of fact not appropriate for decision on demurrer."  *Id.*

25       Here, for example, the front of the Men's Health packaging states "Supports prostate health"
26 with an asterisk leading a consumer to a disclaimer on the back that the statement has not been
27 evaluated by the FDA.  (SAC ¶¶ 15-16; RJN Ex. B.)  The back of the packaging contains further

28

---

[2] The Court declines to reconsider its previous holding that Rule 9(b) does not apply to Plaintiffs' claims.

1  statements about the health benefits of selenium, such as "Selenium may reduce the risk of certain
2  cancers." While there are disclaimers and qualifying language, determining whether a reasonable
3  consumer would be deceived is inappropriate at this stage of the litigation. Further, Plaintiffs allege
4  deceptive advertising in Defendants' television commercials, and the full content of those
5  advertisements are not before the Court. Accordingly, Defendants' motion to dismiss on these grounds
6  is denied.

7         b. Falsity

8      Defendants argue that the studies referenced in the SAC do not show the statements made by
9  Defendants were false before the data was published or that they became false after the data was
10 published. Plaintiffs argue that Defendants' statements were false or misleading at all times.

11     Plaintiffs adequately allege falsity. The SAC details the statements made by Defendants
12 regarding selenium and why Plaintiffs contend the statements are false. (SAC ¶¶ 2, 15-20, 22-41.)
13 The SAC references publications from 2003 and 2007 through 2009 that indicate selenium does not
14 support prostate health and may increase diabetes, and gives ample notice to Defendants to be able to
15 defend against the claims. (SAC ¶¶ 24-40.) Accordingly, Defendants' motion to dismiss on this
16 ground is denied.

17        c. Risk of Diabetes

18     Defendants argue that Plaintiffs' claims regarding the increased risk of diabetes fail because
19 Defendants' products have a different dose of selenium from that used in the studies and Plaintiffs do
20 not allege they have any of the risk factors that were associated with the increased risk of diabetes.
21 Plaintiffs, however, have sufficiently alleged that Defendants' claims regarding the positive benefits
22 of selenium are rendered false or misleading because selenium may in fact be harmful. (SAC ¶ 2.)
23 Accordingly, Defendants' motion to dismiss on this ground is denied.

24              **III.**
25           **CONCLUSION**

26     For the reasons stated above, Defendants' motion to strike is granted in part and denied in part.
27 Defendants' motion to dismiss is denied.
28 ///

1 **IT IS SO ORDERED.**

2 DATED: June 24, 2010

_____
HON. DANA M. SABRAW
United States District Judge