SHIRLI F. WEISS (Bar No. 079225)
JULIE L. HUSSEY (Bar No. 237711)
RYAN T. HANSEN (Bar No. 234329)
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, CA  92101-4297
Tel:  619.699.2700
Fax:  619.699.2701

E-mail:  shirli.weiss@dlapiper.com
E-mail:  julie.hussey@dlapiper.com
E-mail:  ryan.hansen@dlapiper.com

Attorneys for Defendants BAYER CORPORATION
and BAYER HEALTHCARE, LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID JOHNS, an individual, and MARC BORDMAN, an individual, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>BAYER CORPORATION, an Indiana corporation and BAYER HEALTHCARE, LLC, a Delaware limited liability company,<br><br>Defendants. | CV NO.  09 CV 1935 DMS JMA<br><br>**BAYER DEFENDANTS' RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**<br><br>Judge:  Hon. Dana M. Sabraw<br>Courtroom: 10 |

PROPOUNDING PARTIES:   PLAINTIFFS DAVID JOHNS AND MARC BORDMAN

RESPONDING PARTIES:   BAYER CORPORATION AND BAYER HEALTHCARE LLC

SET NUMBER:   ONE

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendants BAYER CORPORATION and BAYER HEALTHCARE LLC ("Defendants") respond to Interrogatories, Set No. One ("Interrogatories") propounded by Plaintiffs DAVID JOHNS and MARC BORDMAN ("Plaintiffs") as follows:

/////

Defendants have not completed their investigation of this case, have not completed discovery, and have not completed preparation for trial. All of the responses contained herein are based only on such information that is presently available to and specifically known to Defendants. It is anticipated that further discovery, independent investigation, legal research and analysis will supply additional facts, add additional meaning to the known facts, as well as establish entirely new factual conclusions and legal contentions, all of which may lead to substantial additions to, changes in, and variations from the responses herein set forth.

The following responses are given without prejudice to Defendants' right to produce evidence of any subsequently discovered fact or facts that Defendants may later develop. The responses contained herein are made in a good faith effort to supply factual information presently known, but should in no way prejudice Defendants with regard to further discovery, research or analysis.

**GENERAL OBJECTIONS**

1. Defendants respond to Plaintiff's Interrogatories, and to each of them, as Defendants reasonably interpret and understand such Interrogatories. If Plaintiffs subsequently assert an interpretation of any Interrogatory that differs from Defendants' understanding, Defendants reserve the right to amend or otherwise supplement the objections and responses herein. Defendants' objections are subject to this qualification, which applies to each of the Interrogatories, and which is incorporated in full by this reference into each and every response below as if set forth therein. Defendants reserve the right to make further objections as the case proceeds.

2. Defendants, in responding to the Interrogatories, do not concede the relevance or admissibility of any information set forth herein. Each response or objection herein is expressly subject to and does not waive any objections concerning the competency, relevancy, materiality, confidentiality and/or admissibility of the information requested for any purpose. Defendants further reserve their rights to object to any discovery proceeding involving or relating to any

subject matter or request, as well as the right, at any time, to amend, alter, revise, clarify, delete, withdraw and/or supplement any of the responses.

3. Defendants object to the Interrogatories, to the extent they seek privileged or confidential information or documents, including information and documents subject to the attorney-client privilege, the attorney work product doctrine, the joint defense and common interest privileges, privileges protected under state or federal law, or any other applicable privilege or discovery exemption.  Nothing contained herein is intended as, or shall in any way be deemed, a waiver or modification of the attorney-client privilege, the attorney work product protection, rights of privacy, or any other applicable privilege or doctrine.

4. Defendants object to the Interrogatories, and each of them, to the extent that any Interrogatory purports to impose obligations other than those imposed by law under the Federal Rules of Civil Procedure and the Federal Rules of Evidence.  Defendants will respond only as required by law.

5. Defendants object to the Interrogatories, and each of them, to the extent they seek information that is already in Plaintiffs' possession or are readily accessible to Plaintiffs.

6. Defendants object to the Interrogatories, and each of them, to the extent they seek information that is not available to Defendants, or not in Defendants' possession, custody or control.

7. Defendants object to each Interrogatory to the extent that it seeks the disclosure of sensitive, proprietary, or confidential business information or trade secrets.  Defendants will provide such information pursuant to the Court-approved protective order.

8. These general objections are incorporated by reference into each and every one of Defendants' responses to the Interrogatories.

**OBJECTIONS TO DEFINITIONS**

1. Defendants object to the definition of the terms "You," "your" and "companies" as vague, overly broad, and not reasonably limited to the subject matter and persons or entities involved in this action.  Defendants further object to the definition of the terms "You," "your" and "companies" to the extent it purports to require the production of documents in the

1  possession, custody or control of persons or entities other than Defendants. Defendants respond
2  to Plaintiff's Interrogatories solely on behalf of themselves and no other person or entity.
3  Defendants further object to the definition of "You," "your" and "companies" on the grounds that
4  such definition includes attorneys and consulting experts, and providing responsive information
5  would therefore impermissibly invade the attorney-client privilege and the attorney work product
6  doctrine.

7      2.    Defendants object to the definition of the term "Advertisement" on the grounds
8  that it is vague, ambiguous, and overly broad.

9      3.    Defendants object to the definition of the term "Affiliate(s)" on the grounds that it
10  is overly broad, unduly burdensome, and oppressive. Defendants further object to the definition
11  of the term "Affiliate(s)" on the grounds that it calls for responses from legal entities and persons
12  or entities separate and distinct from Defendants that are not involved in this action. Defendants
13  further object to the definition of "Affiliate(s)" to the extent that such definition includes
14  attorneys and consulting experts, because providing responsive information would impermissibly
15  invade the attorney-client privilege and the attorney work product doctrine.

16      4.    Defendants object to the definition of the term "Class Period" as vague, overly
17  broad and not reasonably limited to the time period at issue in this action and not properly defined
18  within the applicable statute of limitation. Defendants will limit their responses to information
19  within the "Relevant Period" as defined in Plaintiffs' First Set of Interrogatories.

20      5.    Defendants object to the definition of the term "Employee(s)" as vague, overly
21  broad, and not reasonably limited to the subject matter and persons or entities involved in this
22  action. Defendants further object to the definition of the term "Employee(s)" to the extent it
23  purports to require the furnishing of information or documents in the possession, custody or
24  control of persons or entities other than Defendants. Defendants respond to Plaintiff's
25  Interrogatories solely on behalf of themselves and no other person or entity. Defendants further
26  object to the definition of "Employee(s)" on the grounds that such definition includes attorneys
27  and consulting experts, and providing responsive information would therefore impermissibly
28  invade the attorney-client privilege and the attorney work product doctrine.

6. Defendants object to the definition of the term "Person(s)" on the grounds that it is overly broad, unduly burdensome, oppressive, and not reasonably limited to the subject matter and persons or entities involved in this action. Defendants further object to the definition of the term "Person(s)" to the extent it purports to require the furnishing of information or documents in the possession, custody or control of persons or entities other than Defendants. Defendants respond to Plaintiff's Interrogatories solely on behalf of themselves and no other person or entity. Defendants further object to the definition of "Person(s)" on the grounds that such definition includes attorneys and consulting experts, and providing responsive information would therefore impermissibly invade the attorney-client privilege and the attorney work product doctrine.

7. Defendants object to the definition of the term "Studies" on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and oppressive. Defendants further object to the definition of the term "Studies" on the grounds and to the extent it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to the definition of the term "Studies" on the grounds and to the extent it seeks information and documents that are not in Defendants' possession, custody or control.

## OBJECTIONS TO INSTRUCTIONS

8. Defendants object to Instruction **"A"** on the grounds that it is vague, ambiguous, unduly burdensome, and oppressive. Defendants further object to Instruction **"A"** on the grounds and to the extent it purports to impose any different or additional obligations on Defendants beyond those imposed by the Federal Rules of Civil Procedure and the Federal Rules of Evidence, including but not limited to the instruction to produce supplemental answers within seven days.

9. Defendants object to Instruction **"B"** on the grounds and to the extent it purports to impose any different or additional obligations on Defendants beyond those imposed by the Federal Rules of Civil Procedure and the Federal Rules of Evidence. Defendants further object to Instruction "B" to the extent it calls for information subject to the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection.

10. Defendants object to Instruction "C" on the grounds and to the extent it purports to impose any different or additional obligations on Defendants beyond those imposed by the Federal Rules of Civil Procedure and the Federal Rules of Evidence. Defendants further object to Instruction "C" on the grounds that it is vague, ambiguous, overly broad and unduly burdensome. In addition, Defendants object to this Instruction on the grounds and to the extent it calls for information subject to the attorney-client privilege, the work product doctrine, state and federal privacy laws, or any other applicable privilege or protection.

11. Defendants object to Instruction "D" on the grounds and to the extent it purports to impose any different or additional obligations on Defendants beyond those imposed by the Federal Rules of Civil Procedure and the Federal Rules of Evidence. Defendants also object to Instruction "D" on the grounds that it is overly broad and unduly burdensome. Defendants further object to this Instruction on the grounds and to the extent it calls for information subject to the attorney-client privilege, the work product doctrine, state and federal privacy laws, or any other applicable privilege or protection.

12. Defendants object to Instruction "E" on the grounds and to the extent that it seeks to impose any different or additional obligations on Defendants beyond those imposed by the Federal Rules of Civil Procedure and the Federal Rules of Evidence. Defendants also object to Instruction "E" on the grounds that it, and each of its subparts, is overly broad, duplicative, unduly burdensome and oppressive. Additionally, Defendants object to Instruction "E" on the grounds and to the extent it seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence. Defendants further object to this Instruction on the grounds and to the extent it calls for information subject to the attorney-client privilege, the work product doctrine, state and federal privacy laws (including those protecting the privacy rights of third parties), or any other applicable privilege or protection.

13. Defendants object to Instruction "F" on the grounds and to the extent that it seeks to impose any different or additional obligations on Defendants beyond those imposed by the Federal Rules of Civil Procedure and the Federal Rules of Evidence. Defendants also object to Instruction "F" on the grounds that it is duplicative, overly broad, unduly burdensome and

1  oppressive.  Additionally, Defendants object to Instruction "F" on the grounds and to the extent it
2  seeks information that is neither relevant nor likely to lead to the discovery of admissible
3  evidence.  Defendants further object to this Instruction on the grounds and to the extent it calls for
4  information subject to the attorney-client privilege, the work product doctrine, state and federal
5  privacy laws, the privacy rights of individuals, or any other applicable privilege or protection.

6        14.     Defendants object to Instruction "G" on the grounds and to the extent that it seeks
7  to impose any different or additional obligations on Defendants beyond those imposed by the
8  Federal Rules of Civil Procedure and the Federal Rules of Evidence.

9        15.     Defendants object to Instruction "H" on the grounds and to the extent that it seeks
10 to impose any different or additional obligations on Defendants beyond those imposed by the
11 Federal Rules of Civil Procedure and the Federal Rules of Evidence.  Defendants further object to
12 Instruction "H" on the grounds that it is vague, ambiguous, overly broad, unduly burdensome and
13 oppressive.  Defendants object to this Instruction on the grounds and to the extent it calls for
14 information subject to the attorney-client privilege, the work product doctrine, or any other
15 applicable privilege or protection.  Defendants will comply with the procedures set forth in the
16 Federal Rules of Civil Procedure and the Federal Rules of Evidence, and in the Stipulation to
17 Protocol for the Production of Discoverable Documents and Electronically Stored Information
18 dated December 1, 2010.

19       16.     Defendants object to Instruction "I" on the grounds that it is vague, overly broad,
20 unduly burdensome and oppressive, and not reasonably limited to the subject matter and persons
21 or entities involved in this action.  Defendants further object to the Instruction "I" the extent it
22 purports to require the furnishing of information in the possession, custody or control of persons
23 or entities, including legal entities, separate and distinct from Defendants that are not involved in
24 this action. Further, such Instruction necessarily includes attorneys and consulting experts, and
25 providing responsive information would therefore impermissibly invade the attorney-client
26 privilege and the attorney work product doctrine.

27
28

17. Defendants object to Instruction "J" on the grounds and to the extent that it seeks to impose any different or additional obligations on Defendants beyond those imposed by the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify the studies which you believe constitute the clinical and scientific support for the selenium-related prostate claims made in your advertisements for the Products, including the evidence you believe constitutes the "emerging evidence" referred to in your advertisements for the Products.

**RESPONSE TO INTERROGATORY NO. 1:**

Defendants object to this Interrogatory as overly broad as to time and scope, unduly burdensome, vague as to "selenium- related prostate claims made in our advertisements" and "studies" and oppressive to the extent that it purports to require Defendants to obtain information not in Defendants' possession, custody, or control and because it requests scientific evidence that has been established in many countries over several decades. Defendants further object on the ground that this Interrogatory calls for expert testimony and is, thus, premature.

Subject to and without waiving the above objections, Defendants respond as follows: Bayer's claim that "emerging science suggests selenium may reduce the risk of prostate cancer" was supported by competent and reliable scientific evidence, including both preclinical and clinical studies, as well as epidemiological studies. Specifically, from 1995 to 2008, numerous well-designed, credible studies (as well as a number of review articles assessing these studies) suggested a relationship between selenium intake and a reduced risk of prostate cancer in men. Defendants' claims were made and based on the body of extensive scientific evidence available at the time they were made, which included, but is not limited to, the following studies: Lennart Hardell et al., *Levels of Selenium in Plasma and Glutathione Peroxidase in Erythrocytes in Patients with Prostate Cancer or Benign Hyperplasia*, 4 EUR. J CANCER PREVENTION 91, 91-95 (1995); Larry C. Clark et al., *Effects of Selenium Supplementation for Cancer Prevention in Patients with Carcinoma of the Skin: a Randomized Control Trial*, 276 J. AM. MED. 1957, 1957-

-8-

63 (1996); Larry C. Clark et al., *Decreased Incidence of Prostate Cancer with Selenium Supplementation: Results of a Double-Blind Cancer Prevention Trial*, 81 BRIT. J. UROLOGY 730, 730-34 (1998); Kazuko Yoshizawa et al., *Study of Prediagnostic Selenium Levels in Toenails and the Risk of Advanced Prostate Cancer*. 90 J. NAT CANCER INST. 1219, 1219-29 (1998); Abraham M.Y. Nomura et al., *Serum Selenium and the Subsequent Risk of Prostate Cancer*, 9 CANCER EPIDEMIOLOGY, BIOMARKERS & PREVENTION 883, 883-87 (2000); James D. Brooks et al., *Plasma Selenium Level Before Diagnosis and the Risk of Prostate Cancer Development*, 166 J. UROLOGY 2034, 2034-38 (2001); Eric A. Klein et al., *SELECT: the Next Prostate Cancer Prevention Trial*, 166 J. UROLOGY 1311, 1311-15 (2001); Anna J. Duffield-Lillico et al., *Selenium Supplementation, Baseline Plasma Selenium Status and Incidence of Prostate Cancer: an Analysis of Complete Treatment Period of the Nutritional Prevention of Cancer Trial*, 91 BRIT. J. UROLOGY INT'L. 608, 608-12 (2003); Piet A. van den Brandt et al., *Toenail Selenium Levels and the Subsequent Risk of Prostate Cancer: a Prospective Cohort Study*, 12 CANCER, EPIDEMIOL BIOMARKERS & PREVENTION 866, 866-71 (2003); Haojie Li et al., *A Prospective Study of Plasma Selenium Levels and Prostate Cancer Risk*, 96 J. NAT CANCER INST. 696, 696-703 (2004); Mahyar Etminan et al., *Intake of Selenium in the Prevention of Prostate Cancer: a Systematic Review and Metaanalysis*, 16 CANCER CAUSES CONTROL 1125-31 (2005); Gholamreza Pourmand et al., *Serum Selenium Level and Prostate Cancer: a Case–Control Study*, 60 NUTRITION AND CANCER 171, (2008).

**INTERROGATORY NO. 2:**

Identify any studies you are aware of that support that selenium may increase the risk of diabetes.

**RESPONSE TO INTERROGATORY NO. 2:**

Defendants object to this Interrogatory on the ground that it is vague and ambiguous as to "studies." Defendants further object to this Interrogatory as overly broad as to time and scope, unduly burdensome, and oppressive to the extent that it purports to require Defendants to obtain information not in Defendants' possession. Defendants further object on the ground that this Interrogatory calls for expert testimony and is, thus, premature.

Subject to and without waiving the above objections, Defendants respond as follows: Defendants are not aware of scientifically valid evidence that selenium increases the risk of diabetes. The SELECT study results reflect "a non-significant increase in diabetes mellitus associated with selenium," which the SELECT study investigators expressly have stated may be due to chance. Scott M. Lippman et al., *Effect of Selenium and Vitamin E on Risk of Prostate Cancer and Other Cancers: The Selenium and Vitamin E Cancer Prevention Trial (SELECT)*, 301 J. AM. MED. ASS'N 39, 45 (2009). *See also* Saverio Stranges et al., *Effects of Long-Term Selenium Supplementation on the Incidence of Type 2 Diabetes*, 147 ANNALS OF INTERNAL MED. 217, 217-23 (2007). Notably, after reviewing SELECT and other studies concerning selenium intake in its reevaluation of certain health claims and qualified health claims, the FDA did not express concern about an increased risk of diabetes. *See* Letter from Barbara Schneeman, Director of Office of Nutrition, Labeling & Dietary Supplements and Center Food Safety & Applied Nutrition, to Jonathan Emord, Attorney of Emord & Associates, P.C. (June 19, 2009) *available at* http://www.fda.gov/Food/LabelingNutrition/LabelClaims/QualifiedHealthClaims/.

**INTERROGATORY NO. 3:**

Identify any studies you are aware of that support that selenium does not decrease the risk of prostate cancer.

**RESPONSE TO INTERROGATORY NO. 3:**

Defendants object to this Interrogatory on the ground that it is vague and ambiguous as to "studies". Defendants further object to this Interrogatory as overly broad as to time and scope, unduly burdensome, and oppressive to the extent that it purports to require Defendants to obtain information not in Defendants' possession. Defendants further object on the ground that this Interrogatory calls for expert testimony and is, thus, premature.

Subject to and without waiving the above objections, Defendants respond as follows: Defendants are aware of the following studies that have called into question the relationship between prostate cancer risk and selenium even though numerous well-designed, credible studies (as well as a number of review articles assessing these studies) suggest a relationship between selenium intake and a reduced risk of prostate cancer in men: Gary E. Goodman, et al.,

1  *Predictors of Serum Selenium in Cigarette Smokers and the Lack of Association with Lung and*
2  *Prostate Cancer Risk*, 10 CANCER EPIDEMIOLOGY, BIOMARKERS & PREVENTION 1069, 1069-76
3  (2001); Ulrike Peters et al., *Serum Selenium and Risk of Prostate Cancer–A Nested Case-Control*,
4  85 AM. J. CLINICAL NUTRITION 209, 209-17 (2007); Ulrike Peters et al., *Vitamin E and Selenium*
5  *Supplementation and Risk of Prostate Cancer in the Vitamins and Lifestyle (VITAL) Study*
6  *Cohort*, 19 CANCER CAUSES CONTROL 1975, 1975-87 (2008).  Notably, in the discussion of
7  *VITAL*, the authors pointed out that inconsistencies between the *VITAL* study and studies with
8  contrary results may be explained by the fact that only 6.8% of men in the *VITAL* trial took over
9  50 micrograms/day of selenium.

**INTERROGATORY NO. 4:**

Identify any studies you are aware of that support that selenium may increase the risk of prostate cancer.

**RESPONSE TO INTERROGATORY NO. 4:**

Defendants object to this Interrogatory on the ground that it is overly broad as to time and scope, vague, ambiguous, unduly burdensome, and oppressive to the extent that it purports to require Defendants to obtain information not in Defendants' possession..  Defendants further object on the ground that this Interrogatory calls for expert testimony and is, thus, premature..

Subject to and without waiving the above objections, Defendants respond as follows: Defendants will produce scientific studies in Defendants' possession, to the extent that any exist, that support that selenium may increase the risk of prostrate cancer.

**INTERROGATORY NO. 5:**

Identify all person(s) involved at any time in the creation of advertising for the Products by stating each person(s) name, title, employer, business address and department or division, time period of involvement, and whether the person is currently employed by you and, if not, the person's last known home address, business address and telephone number.

**RESPONSE TO INTERROGATORY NO. 5:**

Defendants object to this Interrogatory on the ground that it is vague, ambiguous, overly broad, unduly burdensome, and oppressive and seeks information outside the Relevant Period.

Defendants further object to this Interrogatory to the extent it requires disclosure of information that would infringe upon the legitimate privacy rights and expectations of current or former employees of Defendants or any current or former affiliates or related companies or subsidiaries, or other individuals, to the extent that such privacy rights and expectations are protected by law or public policy.

Subject to and without waiving the above objections, Defendants respond as follows: Defendants will produce Bayer's internal organization charts reflecting Defendants' employees whose responsibilities included the marketing of One-A-Day® Men's Health Formula® and One-A-Day® Men's 50+ Advantage® during the Relevant Period. All current and former Bayer employees should be contacted only through undersigned counsel for Bayer.

**1) Reese Fitzpatrick**
Marketing Director (Bayer Aspirin), Bayer Consumer Care Division – Brand Management
Involvement with Products: 2005 to mid-2009

**2) Tracy Nunziata**
Marketing Director (One-A-Day), Bayer Consumer Care Division – Brand Management
Involvement with Products: mid-2008 to present

**3) Michaela Griggs**
Vice President, U.S. Marketing, Diabetes Portfolio, Bayer HealthCare
Involvement with Products: mid-2000 to early 2003

**4) Pana Beke**
Senior Associate Director, Nutritional Science & New Business, Medical Affairs
Involvement with Products: 2005 to present

**5) Dara Siva**
Senior Manager, Market Research, Bayer Consumer Care Division
Involvement with Products: 2000 to present

**6) Sarah Egan**
Marketing Director, Bayer HealthCare Pharmaceuticals
Involvement with Products: late 2005 to mid-2008

**7) Thomas Fill**
Country Division Head, Consumer Care Division (Ecuador)
Involvement with Products: 2006 to 2008

**INTERROGATORY NO. 6:**

Provide the timeframe(s) and geographic locations in which each of the sales materials, promotional materials, and advertisements identified in response to Request for Production No. 5 were utilized. In responding to this interrogatory, provide the timeframe and geographic location for final materials, and advertisements only.

**RESPONSE TO INTERROGATORY NO. 6:**

Defendants object to this Interrogatory on the ground that it is vague, ambiguous, overly broad, unduly burdensome and oppressive. In addition, Defendants object to this Interrogatory to the extent that it seeks the disclosure of sensitive, proprietary, or confidential business information or trade secrets.

Subject to and without waiving the above objections, Defendants respond as follows: Defendants will produce media buy schedules for One-A-Day® Men's Health Formula® and One-A-Day® Men's 50+ Advantage® for the Relevant Period which reflect the requested information.

**INTERROGATORY NO. 7:**

Provide the timeframe(s) and geographic locations in which each of the labeling materials indentified in response to Request for Production Nos. 6 and 7 were utilized. In responding to this interrogatory, provide the timeframe and geographic location for final labeling materials.

**RESPONSE TO INTERROGATORY NO. 7:**

Defendants object to this Interrogatory on the ground that it is vague, ambiguous, overly broad, unduly burdensome and oppressive. Specifically, this Interrogatory is vague as to "final labeling materials." In addition, Defendants object to this Interrogatory to the extent that it seeks the disclosure of sensitive, proprietary, or confidential business information or trade secrets.

Subject to and without waiving the above objections, Defendants respond as follows: to the extent possible Defendants will identify the geographic locations and years in which One-A-Day® Men's Health Formula® and One-A-Day® Men's 50+ Advantage® labeling materials were distributed.

**INTERROGATORY NO. 8:**

Provide by year and state the net sales attributable to the sale of One-A-Day Men's 50+ Advantage in the United States during the Class Period.

**RESPONSE TO INTERROGATORY NO. 8:**

Defendants object to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome and oppressive. In addition, Defendants object to this Interrogatory to the extent that it seeks the disclosure of sensitive, proprietary, or confidential business information or trade secrets.

Subject to and without waiving the above objections, Defendants respond as follows: Defendants will identify year-by-year the annual net sales attributable to the sale of One-A-Day Men's 50+ Advantage in the United States during the Relevant Period.

- 2005: None
- 2006: None
- 2007: $8,150,333
- 2008: $14,657,731
- 2009: $16,821,069

**INTERROGATORY NO. 9:**

Provide by year and state the net sales attributable to the sale of One-A-Day Men's Health Formula in the United States during the Class Period.

**RESPONSE TO INTERROGATORY NO. 9:**

Defendants object to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and oppressive. In addition, Defendants object to this Interrogatory to the extent that it seeks the disclosure of sensitive, proprietary, or confidential business information or trade secrets.

Subject to and without waiving the above objections, Defendants respond as follows: Defendants will identify year-by-year the annual net sales attributable to the sale of One-A-Day Men's Health Formula in the United States during the Relevant Period.

- 2005:  $32,171,977
- 2006:  $38,199,875
- 2007:  $38,513,507
- 2008:  $41,855,735
- 2009:  $38,461,142

**INTERROGATORY NO. 10:**

Provide by year and state the gross profit margin for the sale of One-A-Day Men's 50+ Advantage in the United States from 2000 to the present.

**RESPONSE TO INTERROGATORY NO. 10:**

Defendants object to this Interrogatory on the grounds that it is vague and ambiguous. Defendants further object to this Interrogatory on the grounds that it is overly broad, unduly burdensome and oppressive. In addition, Defendants object to this Interrogatory to the extent that it seeks the disclosure of sensitive, proprietary, or confidential business information or trade secrets. Defendants further object to this Interrogatory on the grounds and to the extent that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Defendants also object to this Interrogatory to the extent that it is premature and not reasonably tailored to seek information relevant to class certification.

**INTERROGATORY NO. 11:**

Provide by year and state the gross profit margin for the sale of One-A-Day Men's Health Formula in the United States from 2000 to the present.

**RESPONSE TO INTERROGATORY NO. 11:**

Defendants object to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome and oppressive. In addition, Defendants object to this Interrogatory to the extent that it seeks the disclosure of sensitive, proprietary, or confidential business information or trade secrets. Defendants further object to this Interrogatory on the grounds and to the extent that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Defendants also object to this Interrogatory to the extent that it is premature and not reasonably tailored to seek information relevant to class certification.

Dated: December 16, 2010

DLA PIPER LLP (US)

By _____
SHIRLI F. WEISS
JULIE L. HUSSEY
RYAN T. HANSEN
Attorneys for Defendants
BAYER CORPORATION and BAYER HEALTHCARE, LLC

## **CERTIFICATION**

I hereby certify that I am authorized to make this verification on behalf of Bayer Corporation and Bayer HealthCare, LLC (collectively "Bayer") in this matter. I have read and know the contents of the foregoing responses. The answers are not all within my personal knowledge. I am informed and believe that there is no single employee who has full personal knowledge of all of the matters set forth therein, and that the answers were prepared with the advice and assistance of employees and representatives of Bayer. Subject to inadvertent or undiscovered errors and reserving the right to make changes in the response if it appears that there were errors or omissions or supplemental information is discovered, I affirm that the matters stated are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States of America that the preceding is true and correct and that I executed this verification on December ____, 2010, at Morristown, New Jersey.

By: _____

Dated: December ___, 2010

DLA PIPER LLP (US)

By _____
SHIRLI F. WEISS
JULIE L. HUSSEY
RYAN T. HANSEN
Attorneys for Defendants
BAYER CORPORATION and BAYER HEALTHCARE, LLC

## CERTIFICATION

I hereby certify that I am authorized to make this verification on behalf of Bayer Corporation and Bayer HealthCare, LLC (collectively "Bayer") in this matter. I have read and know the contents of the foregoing responses. The answers are not all within my personal knowledge. I am informed and believe that there is no single employee who has full personal knowledge of all of the matters set forth therein, and that the answers were prepared with the advice and assistance of employees and representatives of Bayer. Subject to inadvertent or undiscovered errors and reserving the right to make changes in the response if it appears that there were errors or omissions or supplemental information is discovered, I affirm that the matters stated are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States of America that the preceding is true and correct and that I executed this verification on December 15th, 2010, at Morristown, New Jersey.

By: *David C. Christenson* (signature)