1  **BLOOD HURST & O'REARDON, LLP**
   TIMOTHY G. BLOOD (149343)
2  THOMAS J. O'REARDON II (247952)
   600 B Street, Suite 1550
3  San Diego, CA 92101
   Telephone: (619) 338-1100
4  Facsimile: (619) 338-1101
   tblood@bholaw.com
5  toreardon@bholaw.com

6  **BONNETT, FAIRBOURN,**
   **  FRIEDMAN & BALINT, P.C.**
7  TODD D. CARPENTER (234464)
   600 West Broadway, Suite 900
8  San Diego, CA 92101
   Telephone: (619) 756-6978
9  Facsimile: (602) 798-5860
            - and -
10 ANDREW S. FRIEDMAN
   ELAINE A. RYAN
11 PATRICIA N. SYVERSON (203111)
   2901 N. Central Avenue, Suite 1000
12 Phoenix, AZ 85012-3311
   Telephone: (602) 274-1100
13 Facsimile: (602) 798-5825

14 *Attorneys for Plaintiffs*

15                UNITED STATES DISTRICT COURT

16           FOR THE SOUTHERN DISTRICT OF CALIFORNIA

17

18 DAVID JOHNS, an Individual, and MARC      Case No. 09 CV 1935 AJB POR
   BORDMAN, an Individual, on Behalf of
19 Themselves, All Others Similarly Situated,  **[REDACTED] PLAINTIFFS' REPLY IN**
   and the General Public,                     **SUPPORT OF MOTION FOR CLASS**
20                                             **CERTIFICATION AND RESPONSE TO**
                          Plaintiffs,          **BAYER'S OBJECTIONS**
21          v.
22 BAYER CORPORATION, an Indiana              Date:      January 20, 2012
   corporation and BAYER HEALTHCARE,         Time:      1:30 p.m.
23 LLC, a Delaware limited liability company,  Judge:     Hon. Anthony J. Battaglia
                                              Crtrm:     12
24                        Defendants.

25

26

27

28

1

2

## <u>TABLE OF CONTENTS</u>

3                                                                                          **PAGE**

4   I.      INTRODUCTION ...........................................................................................1

5   II.     PLAINTIFFS HAVE STANDING.............................................................3

6   III.    THE ISSUE OF STATUTE OF LIMITATIONS PRESENTS A CLASS ISSUE ............4

7   IV.     THE COMMONALITY AND PREDOMINANCE REQUIREMENTS
            ARE SATISFIED................................................................................5

8

9           A.      The Message Conveyed And Its Veracity Present Predominating Issues ...............5

10                  1.      The Message Conveyed Can Be Determined On A Classwide Basis ........5

11                  2.      The Veracity And Substantiation Of The Prostate Health Message
                            Can Be Presented With Classwide Evidence.................................8

12          B.      Causation And Reliance, To The Extent Required, Present Predominating
                    Issues That Can Be Established With Classwide Evidence....................................9

13

14          C.      The Proper Remedy Presents A Predominate Issue...............................................11

15  V.      *WAL-MART* DOES NOT PRECLUDE CERTIFICATION ............................................12

16  VI.     PLAINTIFFS SATISFY THE TYPICALITY AND ADEQUACY STANDARDS.........13

17  VII.    BAYER'S "OBJECTIONS" (D.E. NO. 80) ARE MERITLESS ......................................14

18          1.      The Chan Study........................................................................................14

19          2.      Statements Contained On Packaging ..................................................15

20          3.      Date Of Document Bayer-0000995 ......................................................15

21          4.      Durkee Testimony....................................................................................15

22          5.      Bayer's Motion To Strike Attorney General References.......................15

23  VIII.   CONCLUSION..............................................................................................15

24

25

26

27

28

Case No. 09 CV 1935 AJB POR

Plaintiffs' Reply Memo. In Support of Motion for Class Certification

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**PAGE**

3

*Aho v. AmeriCredit Fin. Servs., Inc.*, No. 10cv1373 DMS (BLM),
  2011 WL 3047677, n.7 (S.D. Cal. July 25, 2011),
4
  opinion superseded by --- F.R.D. ----, 2011 5401799 (S.D. Cal. Nov. 8, 2011) ................3

5

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) ...................................................................12
6

*Brazil v. Dell, Inc.*,
7
  No. 07-1700, 2010 WL 5387831 (N.D. Cal. Dec. 21, 2010) ........................10

8

*Campion v. Old Republic Home Prot. Co., Inc.*,
  272 F.R.D. 517 (S.D. Cal. 2011) .........................................................5-6
9

*Cent. Cmty. Church of God v. Ent & Imler CPA Group, PC*,
10
  No. 03-678, No. 03-678, 2005 WL 1115960  (S.D. Ind. May 9, 2005) ...........4

11

*Chavez v. Blue Sky Natural Bev. Co.*,
  268 F.R.D. 365, 379 (N.D. Cal. 2010) ...................................................12
12

*Cooper v. Pac. Life Ins. Co.*,
13
  229 F.R.D. 245 (S.D. Ga. 2005) .............................................................4

14

*Davis v. Southern Bell Tel. & Tel. Co.*,
  No. 89-2839-CIV, 1993 WL 593999 (S.D. Fla. Dec. 23, 1993)....................12
15

*Ellis v. Costco Wholesale Corp.*,
16
  657 F.3d 970 (9th Cir. 2011) .................................................................14

17

*Estate of Migliaccio v. Midland Nat'l Life Ins. Co.*,
  436 F. Supp. 2d 1095 (C.D. Cal. 2006) ...................................................15
18

*F.T.C. v. Figgie Int'l, Inc.*,
19
  994 F.2d 595 (9th Cir. 1993) .................................................................11

20

*Fletcher v. Celsius Holdings, Inc.*,
  No. BC439055 (L.A. Sup. Ct. Sept. 1, 2011) ............................................3
21

*Galvan v. KDI Distrib.*,
22
  No. 08-999, 2011 WL 5116585 (C.D. Cal. Oct. 25, 2011)............................9

23

*Godec v. Bayer Corp.*,
  No. 1:10-CV-224, 2011 WL 5513202 (N.D. Ohio Nov. 11, 2011)......1, 4-5, 6, 7-8, 11, 12
24

*Gonzalez v. Proctor & Gamble Co.*,
25
  247 F.R.D. 616 (S.D. Cal. 2007) ............................................................6

26

*Hilao v. Estate of Marcos*,
  103 F.3d 767 (9th Cir. 1996) .................................................................11
27

*In re Conseco Life Ins. Co. Lifetrend Ins. Sales & Mktg. Litig.*,
28
  270 F.R.D. 521 (N.D. Cal. 2010)............................................................4

*In re Ferrero Litig.,*
    No. 11–205, 2011 U.S. Dist. LEXIS 131533 (S.D. Cal. Nov. 15, 2011) ...........................7

*In re Monumental Life Ins. Co.,*
    365 F.3d 408 (5th Cir. 2004) ...........................................................................................4

*In re Prudential Ins. Co. of Am. Sales Practices Litig.,*
    962 F.Supp. 450 (D.N.J. 1997) .......................................................................................4

*In re Tobacco II Cases,*
    46 Cal. 4th 298 (2009) ....................................................................................2, 9, 10, 14

*In re Vioxx Class Cases,*
    180 Cal.App.4th 116 (2009) ......................................................................................2, 12

*In re Wal-Mart Stores,*
    505 F. Supp. 2d 609 (N.D. Cal. 2007) ..........................................................................15

*Johnson v. General Mills, Inc.,*
    --- F.R.D. ----, 2011 WL 4056208 (C.D. Cal. Sept. 12, 2011) .................................12, 13

*Johnson v. General Mills, Inc.,*
    275 F.R.D 282 (C.D. Cal. 2011)..........................................................................2, 4, 9, 10

*Klay v. Humana, Inc.,*
    382 F.3d 1241 (11th Cir. 2004) ....................................................................................12

*Kwikset Corp. v. Superior Court,*
    51 Cal. 4th 310 (2011) ...................................................................................................10

*Lima v. Gateway, Inc.,*
    710 F. Supp. 2d 1000 (C.D. Cal. 2010) ..........................................................................3

*Mass Mutual Life Ins. Co. v. Superior Court,*
    97 Cal. App. 4th 1282 (2002) ...................................................................................4, 10

*McAdams v. Monier, Inc.,*
    182 Cal.App.4th 174 (2010) ..........................................................................................10

*Medrazo v. Honda of N. Hollywood,*
    166 Cal. App. 4th 89 (2008) ..........................................................................................11

*Nelson v. Mead Johnson Nutrition Co.,*
    270 F.R.D. 689 (S.D. Fla. 2010).......................................................................................3

*Occidental Land, Inc. v. Sup. Ct.,*
    18 Cal. 3d 355 (1976) ......................................................................................................9

*Otte v. Life Ins. Co. of N. Am.,*
    275 F.R.D. 50, 56-57 (D. Hi. 2011) ................................................................................4

*Red v. Kraft Foods, Inc.,* No.
    CV 10–1028–GW(AGRx), 2011 WL 4599833 (C.D.Cal. Sept. 29, 2011) ......................4

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010). ......................................................................13

*Sevidal v. Target Corp.*,
    189 Cal. App. 4th 905 (2010) ........................................................................5

*Shein v. Canon U.S.A., Inc.*,
    No. CV 08-07323 CAS (Ex), 2009 WL 3109721 (C.D. Cal. Sept. 22, 2009)..................15

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011) ..............................................................2, 3, 9, 10

*Steroid Hormone Product Cases*,
    181 Cal. App. 4th 145 (2010) ........................................................................9

*Tourgeman v. Collins Fin. Servs.*,
    No. 08-1392, 2011 WL 5025152 (S.D. Cal. Oct. 21, 2011) ...............................13

*United States v. Philip Morris USA, Inc.*,
    449 F. Supp. 2d 1, 157 (D.D.C. 2006) .........................................................7

*Vasquez v. Sup. Ct.*,
    4 Cal. 3d 800 (1971) ..............................................................................9, 10

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ..........................................................................10, 12

*Waste Mgmt. Holdings, Inc. v.* Mowbray,
    208 F.3d 288, 297 (1st Cir. 2000) ................................................................4

*Webb v. Carter's Inc.*,
    272 F.R.D. 489 (C.D. Cal. 2011) ..................................................................5

*Wiener v. Dannon Co., Inc.*,
    255 F.R.D. 658, 669 (C.D. Cal. 2009) .......................................................10, 12

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ........................................................................3

*Yumul v. Smart Balance, Inc.*,
    733 F. Supp. 2d 1117 (C.D. Cal. 2010) .........................................................5

**OTHER**

WILLIAM RUBENSTEIN, ALBA CONTE & HERBERT B. NEWBERG,
    NEWBERG ON CLASS ACTIONS, §10:12 at 508 (4th ed. 2002) ...........................11

Case No. 09 CV 1935 AJB POR

Plaintiffs' Reply Memo. In Support of Motion for Class Certification

iv

# I.      INTRODUCTION

This action is ideally suited for class certification because it involves: 1) one set of consumer protection laws; 2) products that cost too little to justify individual litigation and are conspicuously labeled with the very same promise on every package and every advertisement for the product; and 3) a closed set of purported scientific substantiation that can and has been analyzed on a generalized, classwide basis, as any scientific claim is analyzed.  Earlier this month, the Northern District of Ohio certified a class of Ohio purchasers of Bayer's Men's Health Formula vitamins that is based on the same prostate health claims here.  *Godec v. Bayer Corp.*, No. 1:10-CV-224, 2011 WL 5513202 (N.D. Ohio Nov. 11, 2011).  The Class in *Godec* is represented by the same lawyers here.

The uncontroverted evidence is that Bayer's prostate health promise was made consistently throughout its fully integrated, long-term advertising campaign.  Prostate health was the differentiating feature of these vitamins – the way Bayer branded these vitamins and the reason for a purchaser to buy them instead of another vitamin.  As the exhibits to the declaration of Bayer's own witness confirm, the ***only*** Men's Vitamins[1] packaging not labeled with the prostate health message were two package versions used after June 2009 – *only after* the FDA forced Bayer to stop making the false prostate health message.  *See* D.E. No. 79-1 (Ackerman Decl.), at Exs. K-L.  ***Every*** other Men's Vitamins package used from 2002-2009 contained the prostate health message on ***at least four*** of the packaging's five panels.  *Id.* at Exs. A- J; *Godec*, 2011 WL 5513202, at *11 ("the various packagings for the [Men's Health vitamins] all contain similar prostate-health statements").[2]  Thus, all Class members were exposed to the prostate health message because, by definition, they purchased the Men's Vitamins.  The materiality of this prostate health message, a predominate issue under the UCL and CLRA, is a classwide issue that will be proven with common evidence such as the numerous Bayer marketing studies and consumer surveys already submitted to this Court.

---

[1] "Men's Vitamins" collectively refers to Bayer's One-A-Day Men's Health Formula and One-A-Day 50+ Advantage vitamins.

[2]   Plaintiffs request that this Court certify a Class of all persons who purchased the Men's Vitamins in the State of California from the date the Men's Vitamins were first sold in California to November 30, 2009.  The class certification motion (D.E No. 73-1 at 4) previously identified May 31, 2010, as the end of the proposed Class period.

1    Likewise, whether Bayer's prostate health message is substantiated or not can be determined

2  on a classwide basis, just as Bayer has repeatedly attempted to do whenever it offered its studies in

3  defense of its prostate health message.[3]  Whether the studies that have been identified by the parties

4  and their experts substantiate, or not, the prostate health claim is a determination that applies equally

5  to every Class member.  *Johnson v. General Mills, Inc.*, 275 F.R.D 282, 289 (C.D. Cal. 2011)

6  (holding that "[t]he digestive health benefit of YoPlus [yogurt], or lack thereof, is a common issue

7  that is particularly appropriate for classwide resolution").

8    Each of these predominating common questions is capable of classwide resolution

9  necessarily using classwide evidence, and will generate common answers to the primary questions

10  presented in this lawsuit.  "[R]elief under the UCL is available without individualized proof of

11  deception, reliance and injury."  *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011)

12  (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 320 (2009)).  Likewise, under the CLRA,

13  "[c]ausation on a class-wide basis, may be established by materiality."  *Stearns*, 655 F.3d at 1022

14  (quoting *In re Vioxx Class Cases*, 180 Cal.App.4th 116, 129 (2009)).  "If the trial court finds that

15  material misrepresentations have been made to the entire class, an inference of reliance [under the

16  CLRA] arises as to the class."  *Id.*  Here, the very purpose of Bayer's efforts in 2002 to rebrand its

17  One-A-Day line into sub-brands was to focus on unique health benefits that were perceived as

18  important to the targeted audience (for example, prostate support for men) to provide "████████

19  ████████"[4]  Bayer's other arguments, including that the prostate health claim complied with

20  FDA guidance and was a permissible "structure-function" claim, are merits-based issues that are

21  false and irrelevant to this false advertising action.  Moreover, the issue of whether they are true

---

23  [3] *See, e.g.,* Ryan Decl., Ex. 2 (supplemental interrogatory responses) and Ex. 4 [BAYER-0383181-83] (purported substantiation); Blumberg Decl., Tables 1-2 (listing studies of selenium and prostate cancer); Syverson Decl., Ex. 43 ("substantiation" submissions to television networks).

24  [4] *See* Ryan Decl., Ex. 5 [BAYER-0277125-26]

                        Ex. 6 [BAYER-0066199-00]                    Ex. 7 [BAYER-0071383-84]

1    would present classwide issues.

2           This Class readily meets the prerequisites for certification, and should be certified.

3    **II.    PLAINTIFFS HAVE STANDING**

4           Citing only an unpublished state trial court summary judgment opinion as its sole authority,

5    Bayer makes a confusing argument that Plaintiffs lack standing to bring this action.  Opp. at 10-12

6    (citing *Fletcher v. Celsius Holdings, Inc.*, No. BC439055 (L.A. Sup. Ct. Sept. 1, 2011), Ex. H to

7    Bayer's RJN (D.E. No. 79-6)).  In doing so, Bayer erects a straw man to knock down by borrowing

8    from irrelevant regulatory principles ("structure-function" and "qualified health" claims) to argue the

9    advertising claim in this false advertising suit is somehow different.  The advertising claim – the

10   message conveyed by the labeling and advertisements – is at issue here, and not whether Bayer also

11   violated FDA regulations (which it did, including FDA prohibitions on false advertising).  Plaintiffs

12   assert - and the overwhelming evidence supports - that they can demonstrate on a classwide basis

13   that Bayer conveyed a deceptive advertising message on its labeling and in its other advertisements.

14   It is this overall message conveyed that matters.  *See Williams v. Gerber Prods. Co.*, 552 F.3d 934,

15   939-40 (9th Cir. 2008); *Lima v. Gateway, Inc.*, 710 F. Supp. 2d 1000, 1008 (C.D. Cal. 2010).[5]

16          Moreover, the *Fletcher* court went out of its way to point out that plaintiff's interpretation of

17   the representation was implausible.  Plaintiffs here believed Bayer's representations.  As ***both***

18   Plaintiffs purchased the Men's Vitamins in actual reliance on the promised prostate health benefit,

19   they have standing under Article III, the UCL and the CLRA.[6]  *Stearns*, 655 F.3d at 1020-21

20   (plaintiffs plainly had standing where "they came, saw, were conquered by stealth, and were relieved

21   _____

22   [5] *See also Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 695 (S.D. Fla. 2010) ("Defendant
     devotes much attention to specific representations regarding the quality and contents of Enfamil®

23   LIPIL®, and which ones Plaintiff viewed or relied upon.  Defendant, however, ignores the
     'esssential characteristics of Plaintiff's claim.  Although the precise wording of the representations is

24   varied, the bedrock of Plaintiff's [false advertising] claim is consistent: Defendant deceptively led
     the consuming public to believe that Enfamil® LIPIL® provided infants with something that other

25   infant formulas did not.")
     [6] In *Aho*, relied on by Bayer, the court recognizes that class member Article III standing can be

26   "addressed in several ways, such as through the class definition."  *Aho v. AmeriCredit Fin. Servs.,
     Inc.*, No. 10cv1373 DMS (BLM), 2011 WL 3047677, n.7 (S.D. Cal. July 25, 2011), opinion

27   superseded by --- F.R.D. ----, 2011 5401799 (S.D. Cal. Nov. 8, 2011).  Here, the Class is defined
     such that all Class members have Article III standing.

28

1    of their money"); *Johnson*, 275 F.R.D. at 286 (rejecting the standing arguments Bayer makes here).

2    **III.    THE ISSUE OF STATUTE OF LIMITATIONS PRESENTS A CLASS ISSUE**

3           It is black letter law that both the legal question governing tolling of a statute of limitations

4    and the factual question of whether the statute was tolled present class issues that compel - rather

5    than defeat - certification.  *See, e.g., Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 297 (1st

6    Cir. 2000) ("in those few instances in which a limitations defense might have bite, a common proffer

7    likely would establish the factual predicate necessary for a tolling determination"); *Red v. Kraft*

8    *Foods, Inc.*, No. CV 10–1028–GW(AGRx), 2011 WL 4599833, at *15 (C.D.Cal. Sept. 29, 2011)

9    ("Plaintiffs have alleged delayed discovery [], and such allegations would likely be susceptible to

10   common proof.").

11           Under the UCL and CLRA, whether the Class properly includes consumers who purchased

12   before the applicable statutes of limitation is a merits-based, classwide issue.  *See Mass Mutual Life*

13   *Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1295 (2002) (noting that "the respective statutes

14   of limitation [for UCL and CLRA claims], will probably run from the time a reasonable person

15   would have discovered the basis for a claim").  Accordingly, the court in *Mass Mutual* "reject[ed]

16   Mass Mutual's contention that its statute of limitations defenses will require individual

17   determinations of fact."  *Id.*  Moreover, Bayer's argument that "Plaintiffs have not established facts

18   to justify tolling" is an improper merits argument.  Opp. at 12.  *Cooper v. Pac. Life Ins. Co.*, 229

19   F.R.D. 245, 265 (S.D. Ga. 2005) ("whether class members were on constructive notice by the media

20   coverage, regulatory actions, and litigation, is a common issue, properly reserved for the merits");

21   *Cent. Cmty. Church of God v. Ent & Imler CPA Group, PC*, No. 03-678, No. 03-678, 2005 WL

22   1115960  (S.D. Ind. May 9, 2005) (same).  Moreover, possible limitations issues do not trump the

23   predominance of the common issues.  *See In re Conseco Life Ins. Co. Lifetrend Ins. Sales & Mktg.*

24   *Litig.*, 270 F.R.D. 521, 531 n.8 (N.D. Cal. 2010) ("[I]ndividual issues relating to the statute of

25   limitations do not bar certification where there is otherwise a sufficient showing of commonality.");

26   *see also In re Monumental Life Ins. Co.*, 365 F.3d 408, 420-21(5th Cir. 2004); *In re Prudential Ins.*

27   *Co. of Am. Sales Practices Litig.*, 962 F.Supp. 450, 513 (D.N.J. 1997); *Otte v. Life Ins. Co. of N.*

28   *Am.*, 275 F.R.D. 50, 56-57 (D. Hi. 2011).  Conspicuously absent from Bayer's argument is any

1   evidence that a single consumer knew the truth about Bayer's prostate promise, even though Bayer

2   was conducting extensive market research on the products during this time period.  As Judge Gwin

3   in *Godec* noted, "the overwhelming majority of consumers probably trusted Bayer."  *Godec*, 2011

4   WL 5513202 at *7.  Whether or not the reasonable person knew about Bayer's false advertising is a

5   classwide issue, and Bayer's statute of limitations argument should be rejected.[7]

6   **IV.   THE COMMONALITY AND PREDOMINANCE REQUIREMENTS ARE SATISFIED**

7
8           Bayer's commonality and predominance-related arguments (which it conflates), ignore the

9   reliance, causation and injury requirements of the UCL and CLRA.  Bayer also ignores the reality

10  that ***every*** Class member purchased Men's Vitamins in packages covered with the prostate promise.

11  Bayer also glosses over the extensive television, radio, and print advertisements that all repeated and

12  reinforced the prostate health message.

13          **A.   The Message Conveyed and it's Veracity Present Predominating Issues**

14                  **1.   The Message Conveyed Can Be Determined on a Classwide Basis**

15          Bayer argues that class certification is inappropriate because Plaintiffs cannot prove exposure

16  and causation because, it claims, some Class members were not exposed to the prostate message.

17  Bayer then implies that class certification fails if "some portion of the class would not have been

18  exposed to the alleged misrepresentation and/or would have considered the alleged misrepresentation

19  immaterial."  Opp. at 14.  As the evidentiary record establishes, Bayer has its facts wrong.

20          Further, the cases Bayer cites are inapplicable.  Opp. at 14 (citing *Sevidal v. Target Corp.*,

21  189 Cal. App. 4th 905, 913 (2010) ("Made in USA" representation was only seen by class members

22  who sought "Additional Information" online so not all class members were exposed to the

23  misrepresentation); *Webb v. Carter's Inc.*, 272 F.R.D. 489 (C.D. Cal. 2011) (not all class members

24  were exposed to the product defect because not all consumers were at risk of harm from the toxic ink

25  in the tagless clothing labels); *Campion v. Old Republic Home Prot. Co., Inc.*, 272 F.R.D. 517, 536-

26

27  [7]  *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117 (C.D. Cal. 2010), analyzed whether the discovery rule was properly alleged on a motion to dismiss opinion. *Yumul* is thus inapplicable and Bayer's reliance is misplaced.

28

1   37 (S.D. Cal. 2011) (not all consumers were exposed to the same marketing materials or purchased

2   their home warranty plans in the same way); *Gonzalez v. Proctor & Gamble Co.*, 247 F.R.D. 616,

3   623-24 (S.D. Cal. 2007) (defendant "employed a wide variety of representations" and not all class

4   members received the hair strengthening representations at issue).

5        The subject message was prominently placed on every package, and repeated throughout its

6   television, radio, and print advertisements.  Ackerman Decl. at Exs. A- J; *see also* Ryan Decl., Ex. 1[8]

7   (CD provided by Bayer's lawyers to its expert, Dr. Semenik, entitled "OAD MEN'S & OAD

8   MEN'S 50+ ADS 2007-2009").

9        Further, prostate health need not be the only reason one purchased the vitamins. *See, e.g.,*

10   *Tobacco II*, 46 Cal. 4th at 326; *Vasquez v. Sup. Ct.*, 4 Cal.3d 800, 814 n.9 (1971); *Kwikset Corp. v.*

11   *Superior Court*, 51 Cal. 4th 310, 326-327 (2011) (same).

12        The evidence demonstrates that the consistent, clear message Bayer intended to convey was

13   that selenium and lycopene supported prostate health, including reducing the risk of cancer – a

14   benefit that differentiated Men's Vitamins from other choices.  *See* Opening Mem. 6-10; *Godec*,

15   2011 WL 5513202, at *11 ("[T]he various packagings for Men's Health Formula vitamins all

16   contain similar prostate-health statements.").  Bayer's former Brand Director for the Men's Vitamins

17   testified "all of our messaging and advertising was around prostate health."  Syverson Decl., Ex. 7;

18   Ryan Decl., Ex. 14, Fitzpatrick 190-92 (although various health benefits appeared on packaging the

19   main focus was on advancing the prostate claim).  Numerous internal documents stress that

20   throughout the Class period the prostate health message was the primary message intended to be

21   conveyed in the Men's Vitamins' advertising.  *See, e.g.,* Ryan Decl., Ex. 8 at BAYER-0390585

22   ██████████████████████████████████████████████████

23   ██████████████████████████████████████████████████

24   ██████████████████████████████████████████████████

25   According to internal Bayer documents, the lycopene and selenium references provide ingredient

26

27   [8] All "Ryan Decl., Ex. __" references are to the Declaration of Elaine A. Ryan In Support of
    Plaintiffs' Reply Brief.  All "Syverson Decl., Ex. __" references are to the Declaration of Patricia N.

28   Syverson in Support of Plaintiffs' Motion (D.E. No. 73-2).

1 support for the prostate health claim, and its reference to Harvard Studies provided consumers with a

2 "█████████" the prostate health message.  Ryan Decl., Ex. 9 at BAYER-0115756.

3     ***Every*** Men's Vitamins package from 2002-2009 contained the prostate health message on at

4 least four of the packaging's panels and in ***every*** version of the Men's Vitamins advertising, in-store

5 displays, and even its coupons used during the Class period contain the express and implied prostate

6 health message.  *See* Opening Mem. at 8-9 (television and radio ad focuses on prostate health); Ryan

7 Decl., Ex. 1 (CD entitled "OAD MEN'S & OAD MEN'S 50+ ADS 2007-2009") (the CD is

8 enclosed with the concurrently filed Notice of Lodgment); Ryan Decl., Ex. 10 at BAYER-0017660.

9     As explained in Plaintiffs' opening brief, where, as here, Plaintiffs were exposed to a

10 common advertising campaign, common issues predominate.  *See, e.g., In re Ferrero Litig.,* No. 11–

11 205, 2011 U.S. Dist. LEXIS 131533, at *16-17 (S.D. Cal. Nov. 15, 2011) (predominance satisfied

12 where class members had "common contention" that defendant "made a material misrepresentation

13 regarding the nutritious benefits of Nutella® that violated the UCL, FAL and the CLRA" and "any

14 injury suffered by a class member in this case stems from Defendant's common advertising

15 campaign of Nutella®").

16     Bayer may challenge this evidence before a jury. But in so doing, Bayer will be using

17 classwide evidence – its market research.  For example, Bayer's marketing expert, Dr. Seminik, cites

18 to a single page from a 77-page report to pluck a 3% statistic.  *See* D.E. No. 79-4 (Seminik Decl.),

19 §6(b) (citing BAYER-0000944).  Even the report Dr. Semenik relies on (which did not survey Men's

20 Vitamin purchasers), found that the specific product benefit "██████████████

21 █████████████████████████" Ryan Decl., Ex. 11 at

22 BAYER-0000954.  Although Plaintiffs (and courts) disagree with Dr. Semenik's marketing analysis,

23 he presents classwide evidence demonstrating the propriety of certification.[9]

24

25

26 ────────────

27 [9] *See United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1, 157 (D.D.C. 2006) (refusing to consider Dr. Semenik's testimony about the immateriality of cigarette advertising because "the Court

28 does not find Dr. Semenik's analysis and conclusions persuasive and cannot credit them").

2.      **The Veracity and Substantiation of the Prostate Health Message Can Be Presented with Classwide Evidence**

Scientific substantiation is inherently classwide.  Other than in opposition to this Motion, Bayer agrees.  Bayer's lawyers argue that the body of scientific substantiation was better at certain times during the Class period than others.  Opp. at 20-21.  *Godec* rejected this argument, stating "whether Bayer [] delivered a product that did not conform to its description, is a scientific question common to the class members."  2011 WL 5513202, at *5.[10]  In arguing that the prostate message is substantiated and true, Bayer uses classwide evidence – the very studies it has been using all along and refers to as the "totality of the evidence" – that it asserts "at all times" substantiated the prostate health claim.  *See, e.g.,* D.E. No. 79-2 (Blumberg Decl.), §III.  Indeed, based on his review of the "totality" of the evidence, Dr. Blumberg concludes that the:

- "[T]he totality of nutritional and biomedical research indicates that selenium…plays a beneficial role in reducing the risk of prostate cancer in men and in supporting general prostate health."  Blumberg Decl., §III.C.
- "[T]he totality of scientific evidence involving lycopene and prostate health indicates lycopene… …promote[s] prostate health…and potentially reduc[es] the risk of prostate cancer."  *Id.*, §III.D.

*See also id.*, Tables 1-2 (Blumberg lists studies purportedly supporting his conclusion).  Plaintiffs' expert in *Godec*, Dr. Milman, draws the opposite conclusion based upon his review of the scientific evidence.  *See* Expert Report and Rebuttal Report of Dr. Milman, filed in *Godec* (D.E. Nos. 137-2 and 140-2); Opening Mem., at 10-13.[11]  The jury will determine which expert is more credible.  But, Bayer, Dr. Blumberg and Dr. Milman demonstrate the determination can be made classwide.

Bayer's lawyers are free at trial to argue that at certain points the prostate message was more substantiated than at others.  However, the fact is that from the beginning of the launch, to the NAD's finding that Bayer falsely advertised the prostate health benefits, to the completion of the SELECT study, to July 2009, when Bayer was forced by the FDA to remove the false claim, Bayer could never substantiate its prostate health claim.   Consistent with the testimony of Dr. Blumberg,

---

[10] Even accepting Bayer's statement that its scientific substantiation was in "flux" throughout the Class period, only five relevant clinical trials were published between 2003 and 2009.  Opp. at 21.  The existence of five studies does not destroy predominance of even the classwide science issue.

[11] Bayer's expert, Dr. Blumberg, agrees there is "not enough scientific evidence to support a qualified health claim for prostate cancer reduction" "at this time."  Ryan Decl., Ex. 3, Blumberg at 132.

Bayer's in-house "scientists" Pana Beke, Sefali Patel, and Shane Durkee, and Bayer's business practice, the NAD analyzed the purported scientific substantiation for this very product as it relates to the prostate health message.  In its response to the NAD, Bayer stated that its prostate health claim was consistently made in its television commercials, and it substantiation could be evaluated on a classwide basis.  Ryan Decl., Ex. 4 [BAYER-0383181-83] (████████████████████████████████

████████████████████████████████████████████████████████

████████████████████).[12]

### B.  Causation and Reliance, to the Extent Required, Present Predominating Issues that Can Be Established with Classwide Evidence

Bayer argues that Plaintiffs cannot prove causation or reliance on a classwide basis because consumers bought Men's Vitamins for a variety of reasons.  Opp. at 16-20.  Bayer's argument only applies to Plaintiffs' CLRA claim, because "relief under the UCL is available without individualized proof of deception, reliance and injury."  *Stearns*, 655 F.3d at 1020 (quoting *In re Tobacco II*, 46 Cal. 4th at 320); *Galvan v. KDI Distrib.*, No. 08-999, 2011 WL 5116585 at *10 (C.D. Cal. Oct. 25, 2011) (citing *Tobacco II* stating "[o]nce 'actual reliance' is established with respect to the class representative, the UCL does not require proof of causation and injury for absent class members").

Bayer's CLRA causation argument has been repeatedly rejected.  In *Mass Mutual*, the court upheld certification of 33,000 people who, over 15 years, purchased life insurance policies that Mass Mutual represented would pay a large enough dividend to fund the annual premium.  *Mass Mutual*, 97 Cal.App.4th at 1286.  *Mass Mutual* held that causation could be satisfied if the record permits an "inference of common reliance" to the class where the information "would have been material to any *reasonable person*" purchasing the insurance policy.  *Id.* at 1292-93 (citing *Vasquez,* 4 Cal.3d 800 and *Occidental Land, Inc. v. Sup. Ct.*, 18 Cal.3d 355 (1976)); *Steroid Hormone Product Cases*, 181 Cal.App.4th 145, 157 (2010) (reversing denial of certification of a CLRA claim because a reasonable person would not buy workout pills that were illegal to possess); *Johnson*, 275 F.R.D. at 287 ("a

_____

[12] ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████

1   CLRA claim can be litigated on a classwide basis when the 'record permits an inference of common

2   reliance to the class'") (quoting *McAdams v. Monier, Inc.*, 182 Cal.App.4th 174, 183 (2010) (citing

3   *Mass Mutual*)).

4        Bayer argues that a presumption of reliance is only available upon a showing that the

5   misrepresentation was "material to all, and that reliance does not vary consumer to consumer." Opp.

6   at 17.  Bayer is wrong.  "A misrepresentation is judged to be material if a ***reasonable man*** would

7   attach importance to its existence or nonexistence…and as such materiality is generally a question of

8   fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably

9   find that a reasonable man would have been influenced by it."  *Tobacco II,* 46 Cal.4th at 326-27

10  (emphasis added); *see also Stearns*, 655 F.3d at 1022.  The misrepresentation need not be the sole,

11  predominant, or decisive reason for the action, only a substantial factor.  *Tobacco II*, 46 Cal. 4th at

12  326; *Vasquez*, 4 Cal. 3d at 814 n.9 (1971); *Kwikset Corp.,* 51 Cal. 4th at 326-327 (same).[13]  Bayer

13  cannot and does not argue that the prostate health message for its prostate health vitamins is so

14  "obviously unimportant" that a jury could not find a reasonable man would have been influenced by

15  it.  Indeed, according to Bayer's marketing manager, "███████████████████████████

16  ███████████████████"  Syverson Decl., Ex. 7, Nunziata, at 17:12-24, 19:21-20:4.[14]

17        Under *Wal-Mart Stores, Inc. v. Dukes*, the issue is whether the claims raised have "'the

18  capacity of a classwide proceeding to generate common answers apt to drive the resolution of the

19  litigation.'" 131 S.Ct. 2541, 2551 (2011) (citation omitted).  Because materiality for the CLRA claim

20  – a reasonable person standard – may be proven with classwide evidence, the rebuttable presumption

21  of causation may be tried before the fact-finder.  Bayer is free to use the same documents as it does

22  in its opposition brief to attempt to rebut that presumption, but in so doing, Bayer effectively

---

[13] Materiality cannot be defeated, as Bayer attempts to do, by pointing to the outlying beliefs of cherry-picked class members. *Brazil v. Dell, Inc.*, No. 07-1700, 2010 WL 5387831, at *5 (N.D. Cal. Dec. 21, 2010) ("under California law, plaintiffs need not establish that each and every class member based his or her decision on the [alleged misrepresentation]").

[14] *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 669-670 (C.D. Cal. 2009) (predominance satisfied where health benefit claims were "explicitly and continually" presented through various mediums including product labels and television, print and internet advertising); *Johnson*, 275 F.R.D. at 289 (predominance satisfied where "packaging and marketing communicated a persistent and material message" throughout "different mixes of packages and advertisements").

1   concedes that classwide evidence proves or disproves predominate classwide issues.

2       **C.    The Proper Remedy Presents a Predominate Issue**

3       According to Bayer, each Class member has to identify a "proper comparator product,

4   personal to him, the cost of which would provide a basis for relief as to him." Opp. at 21.  While a

5   price differential-theory (if that is what Bayer means) is one way to determine damages or

6   restitution, even Bayer's damages expert, Dr. Nicholson, sets forth various "possible" means of

7   calculating damages in this case – including analyzing "the price increase [] due solely to the

8   prostate health claims," wholesale price changes, "compar[ing] two products that are identical, other

9   than the fact that one of them makes the prostate health claim," and "isolat[ing] how much of the

10  value of the product is coming from one particular of those attributes or characteristics."  Ryan

11  Decl., Ex. 13, Nicholson, 67, 70, 117.  Likewise, *Godec* found that determining the "difference in

12  value between a vitamin that promotes prostate health and one that does not" presents an issue

13  "common to the class" and, accordingly, "every purchaser is equally damaged." 2011 WL 5513202,

14  at *6.  All of these methodologies are capable of calculation on a classwide basis.  So, too, is

15  restitution of the purchase price.  *F.T.C. v. Figgie Int'l, Inc.*, 994 F.2d 595, 606 (9th Cir. 1993);

16  *Steroid*, 181 Cal.App.4th at 155.[15]

17      Both damages and restitution can be calculated from Bayer's own records, including its retail

18  price surveys or, if necessary, derived from Bayer's gross revenues – a very conservative measure

19  that Bayer cannot dispute.  Opening Mem. at 24-25 (Bayer possesses daily retail price surveys);

20  Ryan Decl., at Ex. 14, Fitzpatrick 216 (Bayer tracks weekly sales).  Once an aggregate fund is

21  calculated, distributing the fund is a routine matter for claims administrators through, *inter alia*, use

22  of Class member affidavits.  *See, e.g., Hilao v. Estate of Marcos*, 103 F.3d 767, 786-87 (9th Cir.

23  1996); *Medrazo v. Honda of N. Hollywood*, 166 Cal. App. 4th 89, 100 (2008); WILLIAM

24  RUBENSTEIN, ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, §10:12 at 508

25  (4th ed. 2002) ("A simple statement or affidavit may be sufficient where claims are small…").

26  _____

27  [15] *See* Expert Report and Rebuttal Report of Jeffrey S. Firestone, CPA, CFE, filed in *Godec* (D.E.
    Nos. 137-1 and 140-1) (Godec Plaintiff's damages expert opined on class-wide damages measures
28  for Ohio purchasers of the Men's Vitamins).

1    Bayer cites to *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 135-36 (2009).  Opp. at 21-22.

2    The *Vioxx* court did not hold that classwide damages could never be calculated where a product does

3    not provide the advertised benefit.  Rather, the *Vioxx* court determined that under the specific facts of

4    that case, plaintiffs' damages theory implicated a patient-specific inquiry dependant on individual

5    medical histories, treatment needs, and drug interactions to determine which substitute product was

6    appropriate.  *Id.* at 136.  Such individual inquiries are not at issue here.  However, even if damages

7    or restitution ultimately involve some individual calculations, the calculations are not as

8    individualized as Bayer implies, and a workable method of computing damages can be achieved.

9    *Wiener*, 255 F.R.D. at 670-71.[16]  Finally, the well settled rule is that individual variations in damages

10   do not defeat predominance.  *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975).

11   **V.    *WAL-MART* DOES NOT PRECLUDE CERTIFICATION**

12   Reflexively, Bayer cites *Dukes,* contending that it prohibits certification because Bayer

13   would be "deprived" of undisclosed "substantive right to prove defenses to individuals' claims."

14   Opp. at 23.  Analyzing *Dukes*, the court in *Johnson v. General Mills, Inc.*, --- F.R.D. ----, 2011 WL

15   4056208 (C.D. Cal. Sept. 12, 2011) rejected this same argument, that certification "deprive[d] them

16   of their due process right to challenge each plaintiff's claim on a case-by-case basis." *Id.* at *5.

17   Nor does *Dukes* prohibit a finding of commonality even if there are some few Men's Vitamin

18   purchasers who were not affected by the prostate health message upon purchase.  *Dukes* recognized

19   that the implementation of a "'biased testing procedure'" would justify a finding of commonality,

20   even if the class included those who only "'might have been prejudiced.'"  *Id.* at 2553.  *Godec*

21   rejected Bayer's same argument, at *7:

22       While Bayer hypothesizes that a large number of class members likely are estopped
         from recovery because they knew that the vitamins did not prevent prostate cancer,
23       the Court does not agree.  As an initial matter, the vitamins' packaging stated

24

25   [16] *See also Klay v. Humana, Inc.*, 382 F.3d 1241, 1273 (11th Cir. 2004) (individual damages can be handled by a special master); *Chavez v. Blue Sky Natural Bev. Co.*, 268 F.R.D. 365, 379 (N.D. Cal.

26   2010) ("one measure of damages that is determinable by objective criteria . . . [is] the price differential between the premium paid for the Blue Sky line of beverages and the lower price of

27   Hansen's mainstream line of beverages"); *Davis v. Southern Bell Tel. & Tel. Co.*, No. 89-2839-CIV, 1993 WL 593999, at *8 (S.D. Fla. Dec. 23, 1993) (calculation of damages is "mechanical...once the

28   fact-finder determines the amount of the overcharge").

1  generally that they supported prostate health.  Therefore, even if many consumers
2  knew that the vitamin would not prevent prostate cancer outright, it does not follow
   that droves of consumers believed Bayer's more general prostate-health claim to be
3  false.  Bayer gives itself too little credit; the overwhelming majority of consumers
   probably trusted Bayer – a well-known company – and believed that there was some
4  prostate-health benefit from taking the vitamins.   Indeed, Bayer alternatively
   maintains that there was such a benefit, and it may be right.  In any event, to the
5  extent Bayer has individualized defenses, it is free to try those defenses against
   individual claimants.

6       The few who theoretically may have purchased Men's Vitamins oblivious to the prostate

7  health message raises at most a back-end damages issue that can be resolved during the claims

8  process.  *See, e.g., Tourgeman v. Collins Fin. Servs.*, No. 08-1392, 2011 WL 5025152 at *7 (S.D.

9  Cal. Oct. 21, 2011) ("whether a putative class member paid money or incurred expenses in response

10 to [defendant's conduct] is an objective inquiry that can be answered by asking class members a

11 single question to determine whether they are entitled to relief….This is hardly the kind of

12 significant inquiry that renders a class definition insufficient.") (citations omitted).  Any other so-

13 called "individualized defenses" – if even relevant – can similarly be handled classwide or during a

14 claims process.  *See Johnson*, 2011 WL 4056208 at *5 ("Defendants may challenge reliance and

15 causation individually during a determination of damages, after the issues that are common have

16 been litigated and resolved.").  Bayer's other arguments (citing its expert, Dr. Blumberg) about the

17 truth of its prostate claims, are improper merits arguments, which are nonetheless classwide issues

18 about science.  Opp. at 24.

19 **VI.    PLAINTIFFS SATISFY THE TYPICALITY AND ADEQUACY STANDARDS**

20      Bayer argues that the named Plaintiffs' claims are not typical and that they are not adequate

21 class representatives.  First, Bayer argues that because Plaintiffs do not allege suffering physical

22 harm they cannot be typical of Class members who did, even though the Class expressly excludes

23 claims for personal injury.  Opp. at 24.  This action is about point-of-purchase loss – not personal

24 injuries.  Second, Bayer argues that Plaintiffs are atypical of Class members who purchased the

25 Men's Vitamins before 2008.  *Id*.  This is a distinction without a difference: the same prostate health

26 message was conveyed throughout the time period.  The change in the reference to an ingredient did

27 not affect the message communicated.  Bayer's final arguments are kitchen-sink attacks on

28 Plaintiffs' "credibility" because they do not have retail receipts for their purchase of the Men's

1  Vitamins (this makes them typical of the other Class members), failed to read FDA-mandated

2  disclaimers on the Men's Vitamins (an irrelevant point, but also more like the average Class

3  member), and testified that reasons in addition to Bayer's advertising caused them to buy the Men's

4  Vitamins (irrelevant, but making them typical of the average Class member).  Opp. at 25.

5         Typicality has to do with whether the legal claims asserted by the named plaintiffs are typical

6  of the legal claims absent class members – not whether there are minor variances in facts.  *Rodriguez*

7  *v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010).  Here, the legal claims asserted are identical to the

8  claims of the Class.  Adequacy has to do with whether there are disabling legal conflicts, not factual

9  differences.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984-85 (9th Cir. 2011).  Bayer does not

10  assert the existence of a legal conflict, disabling or otherwise.

11         Further, the record does not support Bayer's (irrelevant) arguments.  Plaintiffs both testified

12  that they read and relied upon Bayer's prostate health message in purchasing the Men's Vitamins.

13  There is no requirement, as Bayer suggests, that the deceptive message be the sole reason for

14  Plaintiffs' purchases.  *Tobacco II*, 46 Cal. 4th at 326; *see* Ryan Decl., Ex. 15, Johns, 23:1-4 (claim

15  that OAD "supports…prostate health" was "one of the reasons" Johns purchased the product); Ryan

16  Decl., Ex. 16, Bordman, 166 (despite other representations on the packages, the only reason

17  Bordman purchased the product was the "prostate health" claims).[17]

18  **VII.    BAYER'S "OBJECTIONS" (D.E. NO. 80) ARE MERITLESS**

19         Bayer's separately filed objections all either lack merit or raise disputed merits issues having

20  no impact on whether certification is appropriate.  For example:

21         **1.    The Chan Study:**  Bayer contends that Plaintiffs "grossly misrepresented" the results

22  of the Chan study by stating that the study "found that taking selenium 'increased the risk of

23  aggressive cancer' in men having a particular gene – ***a gene which is present in 75% of males.***"

24  Mtn, 12 (emphasis added).  This is not a proper evidentiary objection and Bayer is factually wrong.

25  Neither Bayer nor its expert offers any evidence of any other percentage of men with the V allele

26

27  [17] *See* Ryan Decl., Ex. 15, Johns, 21-22, 52 (read the label and saw the claim that it
   "supports…prostate health"); 48-49, 60-61 (saw tv commercials); Ex. 16, Bordman, 224 ("relied

28  upon reading the packaging," specifically representations about "prostate health and…selenium").

genotype.  Further, that 15% of the study population with the V allele genotype was actually *diagnosed* with aggressive prostate cancer demonstrates that a significant portion of the male population is at a serious risk that selenium consumption will result in prostate cancer.

**2.      Statements Contained on Packaging:** Bayer takes issue with Plaintiffs' claim that the Men's Vitamins' packaging stated the products would "'support prostate health,' including reducing the risk of developing prostate cancer."  However, *every* Men's Vitamins package used from 2002-2009 contains the prostate health claim, including "supports prostate health," on at least four of the five panels of the package.  *See* Ackerman Decl., Exhs. A-J; Ryan Decl., Ex. 17, Semenik at 111-113.  And, Bayer acknowledges that the reduced risk of cancer representation appeared on the Men's Health Formula packages.  *See, e.g.*, Ackerman Decl., at Ex. F.

**3.      Date of Document BAYER-0000995**:  Further review of the metadata confirms that BAYER-0000995 was prepared on January 25, 2006 – not February 2011 – as cited in Plaintiffs' motion.  Because the document was prepared when Bayer was actively making its claims, the document bolsters Plaintiffs' argument that Bayer lacked substantiation for its claims

**4.      Durkee Testimony:** Plaintiffs properly referenced Mr. Durkee's testimony.  Durkee acknowledged that "in April 2008 competent and reliable evidence existed showing there was no association between selenium and prostate cancer."

**5.      Bayer's Motion to Strike Attorney General References**

Bayer also moved to strike Plaintiffs' reference to the Oregon Attorney General's Complaint against it regarding the same prostate health claims.  Motions to strike are "disfavored."  *Estate of Migliaccio v. Midland Nat'l Life Ins. Co.*, 436 F. Supp. 2d 1095, 1100 (C.D. Cal. 2006).  To prevail, Bayer must demonstrate that the AG's action has "'no possible bearing on the subject matter of the litigation.'"  *In re Wal-Mart Stores*, 505 F. Supp. 2d 609, 614 (N.D. Cal. 2007); *Shein v. Canon U.S.A., Inc.*, No. CV 08-07323 CAS (Ex), 2009 WL 3109721, at *8 (C.D. Cal. Sept. 22, 2009).  For the limited purpose it was offered it is relevant.

## VIII.   CONCLUSION

For the reasons stated, Plaintiffs' Motion for Class Certification should be granted and Bayer's Objections should be denied.

DATED: November 23, 2011

BONNETT, FAIRBOURN, FRIEDMAN
    & BALINT, P.C.

*/s/ Patricia N. Syverson*
Andrew S. Friedman
Elaine A. Ryan
Patricia N. Syverson
2901 N. Central Avenue, Suite 1000
Phoenix, Arizona  85012-3311
Telephone:  602-776-5925
602-798-5860 (fax)

TODD D. CARPENTER (234464)
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone:  619/756-7095
602/798-5860 (fax)
tcarpenter@bffb.com

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON (247592)
600 B Street, Suite 1550
San Diego, CA 92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com

PISCITELLI LAW FIRM
FRANK E. PISCITELLI, JR,
55 Public Square, Suite 1950
Cleveland, Ohio 44113
Telephone: (216) 931-7000
Frank@feplaw.com

CLIMACO, LEFKOWITZ, PECA
WILCOX & GAROFOLI CO., L.P.A.
JOHN R. CLIMACO, ESQ.
JOHN A. PECA
PATRICK G. WARNER
55 Public Square, Suite 1950
Cleveland, Ohio 44113
216/621-8484 (Telephone)
216/771-1632 (Telecopier)
jrclim@climacolaw.com
japeca@climacolaw.com
pgwarn@climacolaw.com

1

*Attorneys for Plaintiffs*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on November 23, 2011, I electronically filed the foregoing with the

3   Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail

4   addresses denoted on the Electronic Mail notice list, and I hereby certify that I have mailed the

5   foregoing document or paper via the United States Postal Service to the non-CM/ECF participants

6   indicated on the Manual Notice list.

7          I certify under penalty of perjury under the laws of the United States of America that the

8   foregoing is true and correct.  Executed on November 23, 2011.

9

10                              /s/ *Patricia N. Syverson*
                                Patricia N. Syverson

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28