UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID JOHNS, an Individual, and MARC BORDMAN, an Individual, on Behalf of Themselves and All Others Similarly Situated and the General Public,<br><br>Plaintiff,<br><br>v.<br><br>BAYER CORPORATION, an Indiana Corporation and BAYER HEALTHCARE, LLC, a Delaware Limited Liability Company,<br><br>Defendants. | Civil No.09cv1935 AJB (POR)<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>[Doc. 73] |

Presently before the Court is Plaintiffs' Motion for Class Certification. (Doc. 73.) For the reasons set forth below, the Court **GRANTS** the motion.

**I.**

**BACKGROUND**

David Johns and Marc Bordman ("Plaintiffs") seek to certify a California class for the Unfair Competition Law ("UCL")[1] and the Consumers Legal Remedies Act ("CLRA")[2] causes of action alleged in their Second Amended Class Action Complaint against Bayer Corporation and Bayer Healthcare, LLC ("Bayer" or "Defendants").

---

[1] Cal. Bus. & Prof. Code § 17200, *et seq.*

[2] Cal. Civ. Code § 1750, *et seq.*

Bayer sells the popular "One A Day" ("OAD") line of multivitamins. Plaintiffs challenge statements Bayer made about its OAD Men's Health Formula and OAD Men's 50+ Advantage vitamins (together, "Men's Vitamins"). Plaintiff Johns purchased OAD Men's Health in July 2009, and Plaintiff Bordman purchased OAD Men's 50+ in 2008. Both cite the prostate health claim as a reason they purchased the products.

On the front, back, and sides of the Men's Vitamins' packages and in its advertising, Bayer stated that taking Men's Vitamins daily would **"*support prostate health.*"** Bayer asserted that its Men's Vitamins provided the prostate health benefits because they contained the antioxidant lycopene and later, the trace mineral selenium.

Plaintiffs allege that for this promised material benefit, Bayer charged a price premium over other multivitamins, but that in truth, Men's Vitamins did not provide any prostate health benefits. In fact, according to Plaintiffs, recent clinical studies have shown that for some men, increased selenium consumption may increase their prostate cancer risk.

Plaintiffs claim that Bayer's decision to focus on the prostate health claim was a direct result of its market research into what would sell—not a decision based on a competent and reliable scientifically supported benefit to the consumer. Despite the promise of improved prostate health, Plaintiffs allege that throughout the class period, Bayer never had credible and reliable scientific support for the promise. Plaintiffs further claim that throughout the class period, both Men's Vitamins contained identical amounts of lycopene and selenium, and both came in packages that stated the multivitamins would "support prostate health."

The class Plaintiffs seek to have certified is defined as all persons who purchased the Men's Vitamins in the State of California, from the date the Men's Vitamins were first sold in California with "prostate health" claims to May 31, 2010.

## II.

## LEGAL STANDARDS

**A.     Class Certification**

"The class action is 'an exception' to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550

(2011) (citation omitted). "Class action certifications to encourage compliance with consumer protection laws are 'desirable and should be encouraged.'" *Ballard v. Equifax Check Serv., Inc.*, 186 F.R.D. 589, 600 (E.D. Cal. 1999) (citations omitted); *see Abels v. JBC Legal Grp.*, 227 F.R.D. 541, 547 (N.D. Cal. 2005) (class action is superior when "[m]any plaintiffs may not know their rights are being violated") (citation omitted).

To obtain certification, a plaintiff bears the burden of proving that the class meets all four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—*and* falls within one of the three categories of Rule 23(b). *Ellis*, 657 F.3d at 979-80. This case involves Rule 23(b)(3), which authorizes certification when "questions of law or fact common to class members predominate over any questions affecting only individual class members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"[T]he merits of the class members' substantive claims are often highly relevant when determining whether to certify a class. More importantly, it is not correct to say a district court *may* consider the merits to the extent that they overlap with class certification issues; rather, a district court *must* consider the merits if they overlap with Rule 23(a) requirements." *Ellis*, 657 F.3d.at 981. Nonetheless, the district court does not conduct a mini-trial to determine if the class "could actually prevail on the merits of their claims." *Id.* at 983 n.8; *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010) (citation omitted) (court may inquire into substance of case to apply the Rule 23 factors, however, "[t]he court may not go so far . . . as to judge the validity of these claims."). When the court must determine the merits of an individual claim to determine who is a member of the class, then class treatment is not appropriate. *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 672-73 (N.D. Cal. 2011); 5 James W. Moore, *Moore's Fed. Practice* § 23.21[3][c] (2011).

"The amount of damages is invariably an individual question and does not defeat class action treatment." *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975); *Stearns v. TicketMaster Corp.*, 655 F.3d 1013, 1026 (9th Cir. 2011) (citing *Blackie* in a case decided after

the *Wal-Mart* and *Ellis* decisions); *In re Washington Mutual Mortgage-Backed Sec. Litig.*, —
F.R.D. —, 2011 WL 5027725, at *7 (W.D. Wash. Oct. 21, 2011) (same).

**B.    UCL and CLRA**

Plaintiffs seek to certify their UCL and CLRA claims. "[T]he primary purpose of the unfair competition law . . . is to protect the public from unscrupulous business practices." *Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy*, 4 Cal. App. 4th 963, 975 (1992). A business practice need only meet one of the three criteria ("unlawful," "unfair," or "fraudulent") to violate the UCL. *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1471 (2006). The UCL similarly prohibits "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code §17200. Advertising is broadly defined to include virtually any statement made in connection with the sale of goods or services, including statements and pictures on labels. *See, e.g.*, *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008). Advertising that is likely to deceive the ***reasonable consumer*** violates the false advertising law. *Id.* at 938.

Similarly, a defendant is liable under the CLRA if it misrepresents that its goods possess certain characteristics, uses, or benefits that they do not have or advertises goods with the intent not to sell them as advertised. Cal. Civ. Code § 1770(a)(5), (7), (9) and (16).

## III.

## DISCUSSION

As explained below, the Court finds that Plaintiffs have satisfied the standards set forth in Rule 23(a) and Rule 23(b)(3). The Court also addresses Bayer's separate arguments regarding standing, the applicable statutes of limitations, and the effect of *Wal-Mart Stores, Inc. v. Dukes*.[3]

**A.    Rule 23(a)**

Rule 23(a) enumerates four prerequisites for class certification, referred to as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy.

---

[3] Bayer also separately filed objections to Plaintiffs' motion for class certification, requesting that the Court strike certain exhibits and corresponding citations. (Doc. 80.) The Court disfavors separately filed objections, and in any event, Plaintiffs point out that the objections either lack merit or have no bearing on class certification. For example, some objections relate to the veracity of scientific studies, which goes to the merits of the case, not the issues presently before the Court. The Court therefore overrules Bayer's objections.

*1.     Numerosity*

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Here, it clearly would be difficult or inconvenient to join all members of the proposed class. Between 2005 and 2009, Bayer's national net sales of Men's Health totaled in excess of $189 million, and between 2007 and 2009, its national net sales of Men's 50+ totaled in excess of $39 million. Given these numbers, it is reasonable to assume a sufficient number of individuals purchased the Men's Vitamin's in California to satisfy this requirement. *See Charlebois v. Angels Baseball*, *LP*, 2011 WL 2610122, at *4 (C.D. Cal. June 30, 2011) ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.").

*2.     Commonality*

Rule 23(a)(2) requires questions of law or fact common to the class. According to Plaintiffs, common issues include whether Bayer's advertising of the Men's Vitamins was deceptive and likely to deceive the public. *See Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 664-65 (C.D. Cal. 2009) ("The proposed class members clearly share common legal issues regarding [Defendant's] alleged deception and misrepresentations in its advertising and promotion of the Products.").

Bayer contends that commonality fails because individual issues predominate over common issues. Because this argument overlaps with the Rule 23(b)(3) predominance analysis, the Court addresses it below, concluding that Plaintiffs have demonstrated both commonality and predominance.

*3.     Typicality and Adequacy*

Typicality requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). Adequacy of representation requires that the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). Adequacy is satisfied where (i) counsel for the class is qualified and competent to vigorously prosecute the action, and (ii) the interests of the proposed class representatives are not antagonistic to the interests of the class.

Here, Plaintiffs claim typicality is met because they and the proposed class assert exactly the same claim, arising from the same course of conduct—Bayer's marketing campaign. Likewise, Plaintiffs claim adequacy is met because their interests and class members' interests are fully aligned in determin-

ing whether Bayer's advertisements of the Men's Vitamins were likely to deceive a reasonable consumer. There is also no apparent conflict regarding Plaintiffs' counsel.

Bayer argues that Johns and Bordman are atypical and inadequate. According to Bayer, since Plaintiffs do not allege suffering physical harm, they cannot be typical of class members who did. However, the class does not include claims for personal injury; rather, it is about point-of-purchase loss. Plaintiffs and class members were allegedly injured when they paid money to purchase the Men's Vitamins. Bayer also claims Plaintiffs are subject to unique defenses regarding lack of reliance, credibility, proof of injury, or damages. They also failed to read the FDA disclaimer, lack retail receipts for their purchases, and testified that reasons in addition to Bayer's advertising caused them to buy the Men's Vitamins. But as Plaintiffs note, if anything, these factors may make them more typical (not less) of other class members. Additionally, the Men's Vitamin packages purchased by Plaintiffs and all class members prominently and repeatedly featured the identical "supports prostate health" claim. Plaintiffs and class members thus were all exposed to the same alleged misrepresentations on the packages and advertisements. The Court therefore finds that Plaintiffs have satisfied both the typicality and adequacy requirements.

**B.     Rule 23(b)(3)**

In addition to the prerequisites set forth in Rule 23(a), a class must be maintainable under Rule 23(b). Under Rule 23(b)(3), certification is appropriate if: (i) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (ii) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

*1.     Predominance*

The Court agrees with Plaintiffs that common questions predominate over individual questions. Specifically, the predominating common issues include whether Bayer misrepresented that the Men's Vitamins "support prostate health" and whether the misrepresentations were likely to deceive a reasonable consumer. As Plaintiffs note, these predominant questions are binary—advertisements were either misleading or not, and Bayer's prostate health claim is either true or false. Plaintiffs claim each of

these predominating common questions is capable of class-wide resolution using class-wide evidence, and will generate common answers to the primary questions presented in this lawsuit.

Importantly, California consumer protection laws take an objective approach of the *reasonable* consumer, not the particular consumer. *Williams,* 552 F.3d at 938; s*ee also Yokayama v. Midland National Life Ins. Co.*, 594 F.3d 1087, 1089, 1094 (9th Cir. 2010) ("[T]here is no reason to look at the circumstances of each individual purchase in this case, because the allegations of the complaint are narrowly focused on allegedly deceptive provisions of Midland's own marketing brochures, and the fact-finder need only determine whether those brochures were capable of misleading a reasonable consumer."). Moreover, class reliance can be presumed under both the UCL and CLRA, although the latter requires that a material misrepresentation was made to the class.[4]

Bayer argues that individual issues predominate over common issues because the key factors of reliance, materiality, timing, and damages are all individual issues. The Court addresses each argument in turn.

      *a.*    *Reliance*

Bayer contends that reliance cannot be presumed, since the reason for purchasing the Men's Vitamins is an individual issue, and exposure to advertising would vary by consumer depending on the mix of television, radio, or print advertisements each consumer may have viewed. But at a minimum, everyone who purchased the Men's Vitamins would have been exposed to the prostate claim that appeared on *every package* from 2002 to 2009. This is the predominant issue, not whether or not consumers also saw television or print advertisements. In the Court's view, this fact also distinguishes

---

[4] "[R]elief under the UCL is available *without individualized proof of deception, reliance and injury*." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 320 (2009)) (emphasis added). Likewise, under the CLRA, "[c]ausation on a class-wide basis may be established by materiality." *Stearns*, 655 F.3d at 1022 (quoting *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009)). "If the trial court finds that material misrepresentations have been made to the entire class, *an inference of reliance [under the CLRA] arises as to the class*." *Id.* (emphasis added); *see also Vasquez,* 4 Cal. 3d at 814 ("It is sufficient for our present purposes to hold that if the trial court finds material misrepresentations were made to the class members, at least an inference of reliance would arise as to the entire class."); *Mass Mutual Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1292-93 (2002) (holding that causation could be satisfied if the record permits an "inference of common reliance" to the class where the information "would have been material to any *reasonable person*" purchasing the insurance policy) (emphasis added).

the cases relied upon by Bayer, which denied certification because not every class member was exposed to the misrepresentation.[5]

Moreover, when plaintiffs are exposed to a common advertising campaign, common issues predominate. *See, e.g., In re Ferrero Litig.,* No. 11–205, 2011 U.S. Dist. LEXIS 131533, at *16-17 (S.D. Cal. Nov. 15, 2011) (predominance satisfied where class members had "common contention" that defendant "made a material misrepresentation regarding the nutritious benefits of Nutella® that violated the UCL, FAL and the CLRA" and "any injury suffered by a class member in this case stems from Defendant's common advertising campaign of Nutella®"); *Gonzalez*, 247 F.R.D. at 724 (permitting "an inference of common reliance when the allegations demonstrate that a single, material misrepresentation was directly made to each class member"). Accordingly, the Court is not convinced by Bayer's argument that reliance is an individual issue and cannot be presumed.

      *b.*    *Materiality*

Bayer claims the related issue of materiality also involves individual inquiries, since people buy multivitamins for a variety of reasons, many of which have nothing to do with prostate health benefits. But as noted above, California's consumer protection laws evaluate materiality under a reasonable person standard, not on an individualized basis. Given that the prostate health language appeared on four panels of every package of Men's Vitamins, it very well could have been material to a reasonable

---

[5] *See, e.g.*, *Mazza v. American Honda Motor Co., Inc*., --- F.3d ---, 2012 WL 89176 (9th Cir. 2012) (holding that where many class members never saw the allegedly misleading advertisements prior to purchase, a classwide presumption of reliance was inappropriate); *Gonzalez v. Proctor & Gamble Co.*, 247 F.R.D. 616, 624-25 (S.D. Cal. 2007) (denying certification because the class of consumers "may have seen all, some, *or none* of the advertisements that form the basis of Plaintiff's suit," which does not allow for an inference of reliance) (emphasis added); *Campion v. Old Republic Home Prot. Co.*, 272 F.R.D. 517, 536 (S.D. Cal. 2011) (same); *Sevidal v. Target Corp*., 189 Cal. App. 4th 905, 926 (2010) (denying certification of UCL claim where majority of class members did not see allegedly false representation). Here, by contrast, all class members necessarily saw Bayer's prostate claim, since it appeared prominently on the packaging itself.

person.[6] However, that is a question of fact to be determined at a later stage. Bayer's argument is not sufficient to defeat class certification.

### c. Timing

Bayer further argues that each challenged representation must be evaluated at the time of purchase. According to Bayer, the relevant science regarding the benefits of selenium and/or lycopene was in flux during the class period, and the challenged statements must be evaluated in the context of scientific evidence available at the time each class member purchased Men's Vitamins. However, this argument goes toward the merits of the case (i.e., whether the scientific evidence substantiated Bayer's claims during the class period), not class certification. *See Godec v. Bayer Corp.*, 2011 WL 5513202, at *5 (stating that "whether Bayer [] delivered a product that did not conform to its description, is a scientific question common to the class members").

### d. Damages

Finally, Bayer asserts that individual issues predominate regarding damages. However, the determination of relief does not defeat predominance. As noted above, the amount of damages is often an individual question and does not defeat class action certification. *Blackie v. Barack*, 524 F.2d 891, 905 (9th Cir. 1975).[7] For example, in *Wiener*, the court found that the actual damages for plaintiff's CLRA claim "can be calculated by subtracting the value of the product without the claimed health benefit, a uniform value to be determined based on the evidence presented at trial, from the price the

---

[6] The Court notes that the "prostate health" claim appeared very prominently on the Men's Vitamins packaging. In the images Bayer provided to the Court at the hearing, the prostate claim was frequently listed first among purported benefits, and in more than one instance, the packaging stated prominently that the product contained "five times the amount of Selenium in Centrum® or Centrum® Silver® ." *See, e.g.*, OAD Men's Health Formula: Top of Package (2006); OAD Men's 50+ Advantage: Top Front Panel (2007). This supports Plaintiffs' contention that the prostate health claim was the "reason to believe" the product offered something its competitors did not. This in turn undercuts Bayer's argument that it was just one of many different claims made on the packaging and seems to weigh in favor of its materiality.

[7] Thus, "[i]ndividual damage issues should not, except in extraordinary situations, have any adverse effect on the propriety of aggregate class judgments as a proper means for determining the defendant's liability to the class." 6 A. Conte & H. Newberg, *Newberg on Class Actions*, §10:2 (4th ed. 2002). "Where, as here, common questions predominate regarding liability, the courts generally find the predominance requirement to be satisfied even if individual damages issues remain." *Smilow v. SW Bell Mobile Sys., Inc.*, 323 F.3d 32, 40 (1st Cir. 2003).

particular class member is able to prove he or she paid." *Wiener*, 255 F.R.D. at 670 (citing *Colgan v. Leatherman Tool Group, Inc.*, 38 Cal. Rptr. 3d 36, 42-43 (Cal. Ct. App. 2006).

Accordingly, Bayer's various arguments regarding predominance are not sufficient to defeat certification. The Court concludes that common questions predominate over individual questions.

### 2. *Superiority*

The Court also agrees with Plaintiffs that a class action is superior to other available methods of adjudicating these issues. Judicial economy weighs in favor of a class action where, as here, liability turns on whether advertisements were false or misleading. Likewise, it would be economically infeasible for class members to pursue their claims individually, since the expense of litigating the scientific adequacy of Bayer's claims would be exponentially larger than the small amount in controversy for each individual consumer (less than $10 per purchase). *See, e.g.*, *Wiener*, 255 F.R.D. at 671. It is far more efficient to resolve the common questions regarding materiality, scientific substantiation, and statutes of limitations in a single proceeding rather than to have individual courts separately hear these issues.

The Court therefore concludes that Plaintiffs have met all the requirements of Rule 23(b)(3), as well as Rule 23(a).

**C.   Standing**

Bayer makes a separate argument that neither named Plaintiff has standing to sue. Bayer claims there were two distinct types of prostate health claims: (1) the Qualified Health Claim, which is language proposed by the FDA that appeared on some Men's Vitamins, noting that the FDA had determined the correlation between selenium and reduced cancer risk was not conclusive; and (2) the Structure/Function Claim, which is the language that the product "supports prostate health."

Bayer claims Plaintiffs Johns and Bordman lack standing to assert claims on the Qualified Health Claim because they never saw it prior to purchase, and so it could not have caused them injury. However, the Court does not see how this claim is relevant. The advertising claim—the message conveyed by the labeling and advertisements—is at issue here, not FDA regulations. Plaintiffs assert that they can demonstrate on a class-wide basis that Bayer conveyed a deceptive advertising message on its labeling and in its other advertisements. It is this overall message conveyed that matters. Because

both Plaintiffs allegedly purchased the Men's Vitamins in reliance on the promised prostate health benefit, they have standing under Article III, the UCL, and the CLRA.

### D. Statutes of Limitation

Bayer also argues that certain class members' claims are time-barred. The applicable statutes of limitation are three years under the CLRA and four years under the UCL, yet Plaintiffs seek to certify a class dating back to 2002. However, Plaintiffs contend that both the legal question governing tolling of a statute of limitations and the factual question of whether the statute was tolled present class issues that compel certification, rather than defeat it. Under the UCL and CLRA, whether the class properly includes consumers who purchased before the applicable statutes of limitation is a merits-based, classwide issue. *See Mass Mutual Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1295 (2002) (noting that "the respective statutes of limitation [for UCL and CLRA claims], will probably run from the time a reasonable person would have discovered the basis for a claim"). Accordingly, the court in *Mass Mutual* "reject[ed] Mass Mutual's contention that its statute of limitations defenses will require individual determinations of fact." *Id.* Likewise, Bayer's argument is insufficient to defeat class certification.

### E. *Wal-Mart Stores, Inc. v. Dukes*

As a final argument, Bayer claims the recent *Dukes* case prohibits certification because Bayer would be deprived of its right to prove defenses to individuals' claims. *See* 131 S. Ct. at 2561. For example, Bayer claims the proposed class includes purchasers who are not entitled to recover because they did not place any credence on the prostate health claim—perhaps because they were aware of conflicting scientific studies. However, the *Godec* court rejected this same argument when it granted certification, stating that "to the extent Bayer has individualized defenses, it is free to try those defenses against individual claimants." 2011 WL 5513202, at * 7 (also noting that "Bayer gives itself too little credit; the overwhelming majority of consumers probably trusted Bayer—a well-known company—and believed that there was some prostate-health benefit from taking the vitamins"). The Court agrees that Bayer would not be deprived of its right to try individualized defenses, and therefore *Dukes* does not bar certification.

## IV.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Plaintiffs' Motion for Class Certification.

IT IS SO ORDERED.

DATED: February 3, 2012

_____
Hon. Anthony J. Battaglia
U.S. District Judge